## MASSACHUSETTS *v.* OAKES

### CERTIORARI TO THE SUPREME JUDICIAL COURT OF MASSACHUSETTS

No. 87–1651.   Argued January 17, 1989—Decided June 21, 1989

*James M. Shannon,* Attorney General of Massachusetts, argued the cause for petitioner. With him on the briefs were *Phyllis N. Segal* and *A. John Pappalardo,* Deputy Attorneys General, and *Madelyn F. Wessel, Judy G. Zeprun,* and *H. Reed Witherby,* Assistant Attorneys General.

*Richard J. Vita* argued the cause and filed a brief for respondent.*

JUSTICE O'CONNOR announced the judgment of the Court and delivered an opinion, in which THE CHIEF JUSTICE, JUSTICE WHITE, and JUSTICE KENNEDY join.

This case involves an overbreadth challenge to a Massachusetts criminal statute generally prohibiting adults from posing or exhibiting nude minors for purposes of visual representation or reproduction in any book, magazine, pamphlet, motion picture, photograph, or picture.

I

The statute at issue in this case, Mass. Gen. Laws § 272:29A (1986), was enacted in 1982.[1] It provides as follows:

"Whoever with knowledge that a person is a child under eighteen years of age, or whoever while in posses-

---

*Briefs of *amici curiae* urging reversal were filed for the State of Indiana by *Linley E. Pearson,* Attorney General, and *William E. Daily,* Deputy Attorney General; for the District Attorney for the Middle District of the Commonwealth of Massachusetts by *John J. Conte, pro se,* and *Daniel F. Toomey;* for Citizens for Decency Through Law, Inc., by *Bruce A. Taylor;* for Covenant House et al. by *Gregory A. Loken;* and for the Massachusetts Society for Prevention of Cruelty to Children et al. by *Elizabeth K. Spahn.*

Briefs of *amici curiae* urging affirmance were filed for the American Sunbathing Association, Inc., by *Robert T. Page;* and for the Law and Humanities Institute by *Edward de Grazia.*

[1] For background on the enactment of § 29A, see Boston Globe, June 14, 1982, p. 17, col. 1; Boston Globe, July 21, 1982, p. 17, col. 2.

sion of such facts that he should have reason to know that such person is a child under eighteen years of age, hires, coerces, solicits or entices, employs, procures, uses, causes, encourages, or knowingly permits such child to pose or be exhibited in a state of nudity or to participate or engage in any live performance or in any act that depicts, describes or represents sexual conduct for purpose of visual representation or reproduction in any book, magazine, pamphlet, motion picture film, photograph, or picture shall be punished by imprisonment in the state prison for a term of not less than ten nor more than twenty years, or by a fine of not less than ten thousand dollars nor more than fifty thousand dollars, or by both such a fine and imprisonment.

"It shall be a defense in any prosecution pursuant to this section that such visual representation or reproduction of any posture or exhibition in a state of nudity was produced, processed, published, printed or manufactured for a bona fide scientific or medical purpose, or for an educational or cultural purpose for a bona fide school, museum or library.

"As used in this section, the term 'performance' shall mean any play, dance or exhibit shown or presented to an audience of one or more persons."

Another statute, Mass. Gen. Laws § 272:31 (1986), defines "nudity" as

"uncovered or less than opaquely covered post-pubertal human genitals, pubic areas, the post-pubertal human female breast below a point immediately above the top of the areola, or the covered male genitals in a discernibly turgid state. For purposes of this definition, a female breast is considered uncovered if the nipple or the nipple or areola only are covered. In the case of pre-pubertal persons nudity shall mean uncovered or less than opaquely covered pre-pubertal human genitals or pubic area."

In 1984, respondent Douglas Oakes took approximately 10 color photographs of his partially nude and physically mature 14-year-old stepdaughter, L. S., who at the time was attending modeling school. Tr. 22–30. The photographs depict L. S. sitting, lying, and reclining on top of a bar, clad only in a red and white striped bikini panty and a red scarf. The scarf does not cover L. S.'s breasts, which are fully exposed in all the photographs. The dissent below described the photographs as "sexually provocative photographs of the type frequently found in magazines displayed by storekeepers in sealed cellophane wrappers." 401 Mass. 602, 606, 518 N. E. 2d 836, 838 (1988). See also Brief for Law and Humanities Institute as *Amicus Curiae* 47 (referring to the photographs as "pin-up" art).

Oakes was indicted and tried for violating § 29A. The jury returned a general verdict of guilty, and Oakes was sentenced to 10 years' imprisonment. Because the jury was not instructed on the "sexual conduct" portion of § 29A, Tr. 101–104, its verdict rested on a finding that Oakes "hire[d], coerce[d], solicit[ed] or entice[d], employ[ed], procure[d], use[d], cause[d], encourage[d], or knowingly permit[ted]" L. S. to "pose or be exhibited in a state of nudity." The acts proscribed by § 29A are listed disjunctively, so it is impossible to ascertain which of those acts the jury concluded Oakes had committed. The jury was instructed on the exemptions set forth in § 29A, Tr. 104, but its guilty verdict indicates that the exemptions were found to be inapplicable.

A divided Massachusetts Supreme Judicial Court reversed Oakes' conviction. The majority first held that Oakes' posing of L. S. was speech for First Amendment purposes because it could not "fairly be isolated" from the "expressive process of taking her picture." 401 Mass., at 604, 518 N. E. 2d, at 837. Without addressing whether § 29A could be constitutionally applied to Oakes, the majority struck down the statute as substantially overbroad under the First Amendment. The majority concluded that § 29A "criminalize[d]

conduct that virtually every person would regard as lawful," and would make "a criminal of a parent who takes a frontal view picture of his or her naked one-year-old running on a beach or romping in a wading pool." *Id.*, at 605, 518 N. E. 2d, at 838. The dissent argued that Oakes' conduct did not constitute speech for First Amendment purposes: "Soliciting, causing, or encouraging, or permitting a minor to pose for photographs is no more speech than is setting a house afire in order to photograph a burning house." *Id.*, at 610, 518 N. E. 2d, at 841. The dissent also argued that even if the "nudity" portion of § 29A was overbroad, that portion should have been severed from the remainder of the statute. *Id.*, at 611, n. 4, 518 N. E. 2d, at 841, n. 4.

We granted certiorari to review the decision of the Massachusetts Supreme Judicial Court, 486 U. S. 1022 (1988), and now vacate and remand.

## II

The First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others. *Board of Airport Comm'rs of Los Angeles* v. *Jews for Jesus, Inc.*, 482 U. S. 569, 574 (1987); *Brockett* v. *Spokane Arcades, Inc.*, 472 U. S. 491, 503–504 (1985). See generally Monaghan, Overbreadth, 1981 S. Ct. Rev. 1. The doctrine is predicated on the danger that an overly broad statute, if left in place, may cause persons whose expression is constitutionally protected to refrain from exercising their rights for fear of criminal sanctions. *Schaumburg* v. *Citizens for a Better Environment*, 444 U. S. 620, 634 (1980). Overbreadth doctrine has wide-ranging effects, for a statute found to be substantially overbroad is subject to facial invalidation. We have therefore referred to overbreadth as "manifestl[y] strong medicine" that is employed "sparingly, and only as a last resort." *Broadrick* v. *Oklahoma*, 413 U. S. 601, 613 (1973).

We have addressed overbreadth only where its effect might be salutary. In *Bigelow* v. *Virginia,* 421 U. S. 809 (1975), the defendant argued that the criminal statute under which he was convicted was overbroad. After the defendant was convicted, the statute was amended. The amendment eliminated any possibility that the statute's former version would "be applied again to [the defendant] or [would] chill the rights of others." *Id.,* at 817–818. Because, "[a]s a practical matter," the question of the statute's "overbreadth ha[d] become moot for the future," we declined to "rest our decision on overbreadth," choosing instead to consider whether the former version of the statute had been constitutionally applied to the defendant. *Id.,* at 818.

In our view, *Bigelow* stands for the proposition that overbreadth analysis is inappropriate if the statute being challenged has been amended or repealed. The statute in *Bigelow* was challenged on both overbreadth and as-applied grounds. There was no need for any comment on the overbreadth challenge, as the defendant's conviction could have been—and indeed was—reversed on a narrower and alternative ground, *i. e.,* that the statute was unconstitutional as applied. See *id.,* at 829. That overbreadth was discussed and rejected as a mode of analysis is, we think, evidence that application of *Bigelow* does not depend on whether other questions presented will be answered adversely to the defendant. Indeed, the *Bigelow* overbreadth analysis appears to have been based on the argument made by the State that the amendment of the statute being challenged eliminated the "justification for the application of the overbreadth doctrine." Brief for Appellee in *Bigelow* v. *Virginia,* O. T. 1974, No. 73–1309, p. 19, n. 10.

The procedural posture of the overbreadth question in this case is indistinguishable from that in *Bigelow.* After we granted certiorari, § 29A was amended. See 1988 Mass. Acts, ch. 226. The current version of § 29A, which is set

forth in the margin,[2] adds a "lascivious intent" requirement to the "nudity" portion, but not the "sexual conduct" portion, of the former version of § 29A. In addition, the current version of § 29A contains no exemptions. Because it has been repealed, the former version of § 29A cannot chill protected expression in the future. Thus, as in *Bigelow*, the over-

---

[2] The current version of § 29A, codified at Mass. Gen. Laws § 272:29A (Supp. 1988), provides:

"(a) Whoever, either with knowledge that a person is a child under eighteen years or while in possession of such facts that he should have reason to know that such person is a child under eighteen years of age, and with lascivious intent, hires, coerces, solicits, or entices, employs, procures, uses, causes, encourages, or knowingly permits such child to pose or be exhibited in a state of nudity, for the purpose of representation or reproduction in any visual material, shall be punished by imprisonment in the state prison for a term of not less than ten nor more than twenty years, or by a fine of not less than ten thousand nor more than fifty thousand dollars, or by both such fine and imprisonment.

"(b) Whoever, either with knowledge that a person is a child under eighteen years of age or while in possession of such facts that he should have reason to know that such person is a child under eighteen years of age, hires, coerces, solicits or entices, employs, procures, uses, causes, encourages, or knowingly permits such child to participate or engage in any act that depicts, describes, or represents sexual conduct for the purpose of representation or reproduction in any visual material, or to engage in any live performance involving sexual conduct, shall be punished by imprisonment in the state prison for a term of not less than ten nor more than twenty years, or by a fine of not less than ten thousand nor more than fifty thousand dollars, or by both such fine and imprisonment.

"(c) In a prosecution under this section, a minor shall be deemed incapable of consenting to any conduct of the defendant for which said defendant is being prosecuted.

"(d) For purposes of this section, the determination whether the person in any visual material prohibited hereunder is under eighteen years of age may be made by the personal testimony of such person, by the testimony of a person who produced, processed, published, printed or manufactured such visual material that the child therein was known to him to be under eighteen years of age, or by expert testimony as to the age of the person based upon the person's physical appearance, by inspection of the visual material, or by any other method authorized by any general or special law or by any applicable rule of evidence."

breadth question in this case has become moot as a practical matter, and we do not address it.

There is nothing constitutionally offensive about declining to reach Oakes' overbreadth challenge. Overbreadth is a judicially created doctrine designed to prevent the chilling of protected expression. An overbroad statute is not void *ab initio*, but rather voidable, subject to invalidation notwithstanding the defendant's unprotected conduct out of solicitude to the First Amendment rights of parties not before the court. Because the special concern that animates the overbreadth doctrine is no longer present after the amendment or repeal of the challenged statute, we need not extend the benefits of the doctrine to a defendant whose conduct is not protected. See *Pope* v. *Illinois*, 481 U. S. 497, 501–502 (1987) ("Facial invalidation" of a repealed statute "would not serve the purpose of preventing future prosecutions under a constitutionally defective standard"). Cf. *Upper Midwest Booksellers Assn.* v. *Minneapolis*, 602 F. Supp. 1361, 1369 (Minn.) (amendment of ordinance rendered overbreadth challenge moot, but no conviction involved), aff'd, 780 F. 2d 1389 (CA8 1985). We also note that the amendment of a statute pending appeal to eliminate overbreadth is not different, in terms of applying the new law to past conduct, from a state appellate court adopting a limiting construction of a statute to cure overbreadth. We have long held that in such situations the statute, as construed, "may be applied to conduct occurring prior to the construction, provided such application affords fair warning to the defendants." *Dombrowski* v. *Pfister*, 380 U. S. 479, 491, n. 7 (1965) (citations omitted). See also *Broadrick* v. *Oklahoma*, 413 U. S., at 613 ("Facial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute").

## III

Massachusetts has not asked us to consider Oakes' as-applied challenge to the former version of § 29A in its peti-

tion for certiorari, and we took the case to decide the overbreadth question alone. When the sole question on which we granted certiorari has become moot, our usual course, in cases coming to us from state courts when part of the dispute remains alive, is to vacate the judgment below and remand for further proceedings. See *DeFunis* v. *Odegaard*, 416 U. S. 312 (1974). We have dismissed state court cases rather than vacate and remand them, but only in situations where no state or federal claim remained once the particular claim before us became moot, thereby making a remand unnecessary. See *Attorney General of New Jersey* v. *First Family Mortgage Corp. of Florida*, 487 U. S. 1213 (1988) (underlying mortgage foreclosure dispute ended because debt was satisfied); *Michigan* v. *Shabaz*, 478 U. S. 1017 (1986) (respondent died); *Tiverton Board of License Comm'rs* v. *Pastore*, 469 U. S. 238 (1985) (respondent went out of business and no longer had any claim to press); *Aikens* v. *California*, 406 U. S. 813 (1972) (petitioner obtained complete relief under state constitution before federal constitutional claim was decided); *Ditson* v. *California*, 372 U. S. 933 (1963) (petitioner executed before petition for certiorari was acted upon). Here, a live dispute remains as to whether the former version of § 29A can constitutionally be applied to Oakes. Thus, we vacate the judgment below and remand for further proceedings.

*Vacated and remanded.*

JUSTICE SCALIA, with whom JUSTICE BLACKMUN joins, and with whom JUSTICE BRENNAN, JUSTICE MARSHALL, and JUSTICE STEVENS join as to Part I, concurring in the judgment in part and dissenting in part.

## I

I do not agree with JUSTICE O'CONNOR's conclusion that the overbreadth defense is unavailable when the statute alleged to run afoul of that doctrine has been amended to eliminate the

basis for the overbreadth challenge. It seems to me strange judicial theory that a conviction initially invalid can be resuscitated by postconviction alteration of the statute under which it was obtained. Indeed, I would even think it strange judicial theory that an act which is lawful when committed (because the statute that proscribes it is overbroad) can become retroactively unlawful if the statute is amended *preindictment*. Of course the reason we are tempted to create such curiosities is that the overbreadth doctrine allows a defendant to attack a statute because of its effect on conduct other than the conduct for which the defendant is being punished, thus protecting the right to engage in conduct not directly before the court. See *Brockett* v. *Spokane Arcades, Inc.*, 472 U. S. 491, 503 (1985). And the argument is made that it is senseless to apply this doctrine when the protection of other conduct can no longer be achieved, which is the case when the statute has already been amended to eliminate any unconstitutional "chilling" of First Amendment rights. Even as a policy argument, this analysis fails. The overbreadth doctrine serves to protect constitutionally legitimate speech not merely *ex post*, that is, after the offending statute is enacted, but also *ex ante*, that is, when the legislature is contemplating what sort of statute to enact. If the promulgation of overbroad laws affecting speech was cost free, as JUSTICE O'CONNOR's new doctrine would make it—that is, if *no* conviction of constitutionally proscribable conduct would be lost, so long as the offending statute was narrowed before the final appeal—then legislatures would have significantly reduced incentive to stay within constitutional bounds in the first place. When one takes account of those overbroad statutes that are never challenged, and of the time that elapses before the ones that are challenged are amended to come within constitutional bounds, a substantial amount of legitimate speech would be "chilled" as a consequence of the rule JUSTICE O'CONNOR would adopt.

More fundamentally, however, even if JUSTICE O'CON-NOR's policy analysis were correct, it seems to me that we are only free to pursue policy objectives through the modes of action traditionally followed by the courts and by the law. In my view we have the power to adopt a rule of law which says that the defendant's acts were lawful because the statute that sought to prohibit them was overbroad and therefore invalid. I do not think we have the power to pursue the policy underlying that rule of law more directly and precisely, saying that we will hold the defendant criminally liable or not, depending upon whether, by the time his last appeal is exhausted, letting him off would serve to eliminate any First Amendment "chill." Even if one were of the view that some of the uses of the overbreadth doctrine have been excessive, this would not be a legitimate manner in which to rein it in.[1] JUSTICE O'CONNOR

---

[1] *Bigelow* v. *Virginia*, 421 U. S. 809 (1975), is not to the contrary. In that case, which similarly involved both a facial and an as-applied challenge to a statute that had been amended postconviction, the Court said:

"In view of the statute's amendment since Bigelow's conviction in such a way as 'effectively to repeal' its prior application, there is no possibility now that the statute's pre-1972 form will be applied again to appellant or will chill the rights of others. As a practical matter, the issue of its overbreadth has become moot for the future. We therefore decline to rest our decision on overbreadth and we pass on to the further inquiry, of greater moment not only for Bigelow but for others, whether the statute as applied to appellant infringed constitutionally protected speech." *Id.*, at 817–818.

Although the dissent in *Bigelow* characterized this as a statement that "Virginia's statute cannot properly be invalidated on grounds of overbreadth," *id.*, at 830 (REHNQUIST, J., dissenting), I do not think it says that. Whether the statute *is invalid* because of overbreadth and whether the issue of overbreadth *should be reached* are two quite different questions, and it is only the latter that the Court addressed. The Court simply decided that since the question whether the statute was overbroad was no longer of general interest ("ha[d] become moot for the future"), whereas the issues involved in the as-applied challenge were of continuing importance, the Court would more profitably expend its time on the latter. Moreover, as the Court held Bigelow's conviction unconstitutional on as-applied grounds, it was unnecessary to decide the merits of the overbreadth issue in that case.

seeks to cloak its extravagant constitutional doctrine in conservative garb borrowed from an entirely different area of the law, saying that "[a]n overbroad statute is not void *ab initio*, but rather voidable." *Ante*, at 584. I have heard of a voidable contract, but never of a voidable law. The notion is bizarre.

## II

Since I find that the subsequent amendment of the statute under which Oakes acted and was convicted does not eliminate the defense of overbreadth, I reach the question whether the statute is impermissibly overbroad. I do not believe that it is. Because the Court as a whole does not reach the question, I sketch my views on it only in brief.

In order to be invalidated under our overbreadth doctrine, a statute's unconstitutional application must be substantial, not just in an absolute sense, but "judged in relation to the statute's plainly legitimate sweep." *Broadrick* v. *Oklahoma*, 413 U. S. 601, 615 (1973). We held in *New York* v. *Ferber*, 458 U. S. 747, 756–757 (1982), that the State has a "compelling" interest in "safeguarding the physical and psychological well-being of . . . minor[s]" against harm of the sort at issue here. That case upheld against First Amendment attack a law directed against the use of children in pornographic (including nonobscene) materials. (Although the prohibition related to the distribution of pictures rather than the making of them, the former would seem to be even closer to the core of the First Amendment.) Thus, the scope of this statute has already been validated except as to nonpornographic depiction of preadolescent genitals, and postadolescent genitals and female breasts. On that basis alone, given the known extent of the so-called kiddie-porn industry, Act of May 21, 1984, 98 Stat. 204, and of pornographic magazines that use young female models (to one of which the defendant here apparently intended to send his stepdaughter's photograph), I would estimate that the legitimate scope vastly exceeds the illegitimate.

But the statute is narrowed further still, since it excludes material "produced, processed, published, printed or manufactured for a bona fide scientific or medical purpose, or for an educational or cultural purpose for a bona fide school, museum or library." The only significant body of material that would remain, I estimate, consists of artistic depictions not "produced, processed, published, printed or manufactured . . . for a bona fide school, museum or library," and (the example posited by the Massachusetts court) family snapshots. As to the former: Even assuming that proscribing artistic depictions of preadolescent genitals and postadolescent breasts is impermissible,[2] the body of material that would be covered is, as far as I am aware, insignificant compared with the lawful scope of the statute. That leaves the family photos. The Supreme Judicial Court interpreted the statute to cover "a parent who takes a frontal view picture of his or her naked one-year-old running on a beach or romping in a wading pool." 401 Mass. 602, 605, 518 N. E. 2d 836, 838 (1988). Assuming that it is unconstitutional (as opposed to merely foolish) to prohibit such photography, I do not think it so common as to make the statute *substantially* overbroad. We can deal with such a situation in the unlikely event some prosecutor brings an indictment. Cf. *Ferber, supra,* at 773–774, quoting *Broadrick, supra,* at 615–616.

Perhaps I am wrong in my estimation of how frequently the posings prohibited by this law are done for artistic purposes, or for family photographs — or in some other legitimate

---

[2] JUSTICE BRENNAN evidently believes that the State cannot bar the use of children for nude modeling without reference to "the adult's intentions or the sexually explicit nature of the minor's conduct." *Post,* at 597. That is not unquestionably true. Most adults, I expect, would not hire themselves out as nude models, whatever the intention of the photographer or artist, and however unerotic the pose. There is no cause to think children are less sensitive. It is not unreasonable, therefore, for a State to regard parents' using (or permitting the use) of their children as nude models, or other adults' use of consenting minors, as a form of child exploitation.

and constitutionally protected context I have not envisioned. My perception differs, for example, from JUSTICE BRENNAN's belief that there is an "abundance of baby and child photographs taken every day" depicting genitals, *post*, at 598. But it is the burden of the person whose conduct is legitimately proscribable, and who seeks to invalidate the entire law because of its application to someone else, to "demonstrate from the text of [the law] *and from actual fact*" that substantial overbreadth exists. *New York State Club Assn.* v. *New York City*, 487 U. S. 1, 14 (1988) (emphasis added). That has not been done here.

Having found the ground upon which the Supreme Judicial Court of Massachusetts relied to be in error, I would reverse and remand the case to permit that court to dispose of the as-applied challenge.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE STEVENS join, dissenting.

The proper framework for analyzing respondent's claims is not in doubt. First, we must determine whether the Massachusetts statute criminalizes expression protected by the First Amendment. If it does, then we must decide whether Massachusetts has a compelling interest in regulating that expression. To the extent that the Commonwealth's interest does not justify the suppression of all protected conduct prohibited by the statute, we must further ask whether the law's overbreadth is "not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep," *Broadrick* v. *Oklahoma*, 413 U. S. 601, 615 (1973), once we have adopted any available narrowing constructions or severed offensive portions insofar as it lies within our power to do so. If the statute is excessively overbroad, we have no choice but to strike it down on its face, notwithstanding its laudable objectives and its numerous permissible applications; if it is not, then Oakes and others charged under

it may argue only that their actions, though forbidden by the statute, may not constitutionally be proscribed.[1]

With the possible exception of the final step in this analysis, the resolution of these questions is straightforward. Photography, painting, and other two-dimensional forms of artistic reproduction described in Mass. Gen. Laws § 272:29A (1986) are plainly expressive activities that ordinarily qualify for First Amendment protection. See, *e. g.*, *Miller* v. *California*, 413 U. S. 15 (1973) (works which, taken as a whole, possess serious artistic value are protected). And modeling, both independently and by virtue of its close association with those activities, enjoys like shelter under the First Amendment. Cf. *Schad* v. *Mount Ephraim*, 452 U. S. 61, 66 (1981) ("[N]ude dancing is not without its First Amendment protections from official regulation"). Visual depictions of children engaged in live sexual performances or lewdly exhibiting their genitals cannot, of course, claim protected status, even though those depictions are not obscene. See *New York* v. *Ferber*, 458 U. S. 747 (1982). But other nonobscene representations of minors, including some that are pornographic, are shielded by the Constitution's guarantee of free speech. *Id.*, at 764–765. In particular, "nudity, without more is protected expression." *Id.*, at 765, n. 18, citing *Erznoznik* v. *City of Jacksonville*, 422 U. S. 205, 213 (1975). Because

---

[1] I agree with JUSTICE SCALIA that a State cannot salvage a criminal conviction under a law found to be overbroad, or safeguard its right to prosecute under a law challenged as overbroad, by curing the statute's adjudicated or alleged infirmity prior to review of that conviction or ruling of statutory invalidation by the highest reviewing court. The deterrent effect of the overbreadth doctrine would be significantly impaired if this avenue were open to the States, for oftentimes the strongest and earliest attacks on overbroad laws are, not surprisingly, brought by criminal defendants. Accordingly, I join Part I of JUSTICE SCALIA's opinion holding that a defendant's overbreadth challenge cannot be rendered moot by narrowing the statute after the conduct for which he has been indicted occurred—the only proposition to which five Members of the Court have subscribed in this case.

§ 29A's prohibition extends to posing or exhibiting children "in a state of nudity," rather than merely to their participation in live or simulated sexual conduct, the statute clearly restrains expression within the ambit of the First Amendment.

It is equally evident that the Commonwealth's asserted interest in preventing the sexual exploitation and abuse of minors is "of surpassing importance." *Ferber, supra,* at 757. See also *Ginsberg* v. *New York,* 390 U. S. 629, 639–641 (1968). The coercive enlistment, both overt and subtle, of children in the production of pornography is a grave and widespread evil which the States are amply justified in seeking to eradicate. Massachusetts' interest in ending such conduct undoubtedly suffices to sustain the statute's ban on encouraging, causing, or permitting persons one has reason to know are under 18 years of age to engage in any live sexual performance or any act that represents sexual conduct, for the purpose of visual representation or reproduction.

The Commonwealth lacks an overriding interest, however, in prohibiting adults from allowing minors to appear naked in photographs, films, and pictures with their genitals or, in the case of adolescent girls, their breasts less than opaquely covered under all circumstances except the production of such works "for a bona fide scientific or medical purpose, or for an educational or cultural purpose for a bona fide school, museum or library." § 29A. One situation where the Commonwealth's interest falls glaringly short was cited by the Massachusetts Supreme Judicial Court: parents might want to photograph their infant children or toddlers in the bath or romping naked on the beach, yet § 29A threatens them with a prison term of between 10 and 20 years or a minimum fine of $10,000 for doing so. And § 29A imposes those penalties even though parents have the same First Amendment interest in taking those photographs as they do in keeping a diary or boasting of their children's antics, and even though their children would not thereby be harmed. *Amicus* American Sunbathing Association, a nudist organization with 30,000

members in the United States and Canada, further notes that family photographs taken by its members would subject them to possible prosecution, notwithstanding the protected character of their activity and their denial of any intrinsic connection between public nudity and shame. Massachusetts likewise lacks a compelling interest in forbidding nonexploitative films or photographs of topless adolescents—for instance, the poolside shots that are the norm rather than the exception along the Mediterranean seaboard, and that occur with some frequency on this side of the Atlantic as well—or in barring acting or professional modeling by teenagers that does not involve sexually explicit conduct.

In my view, the First Amendment also blocks the prohibition of nude posing by minors in connection with the production of works of art not depicting lewd behavior and not specifically prepared, in accordance with § 29A's exclusion, for museums or libraries. Many of the world's great artists—Degas, Renoir, Donatello,[2] to name but a few—have worked from models under 18 years of age, and many acclaimed photographs and films have included nude or partially clad minors.[3] The First Amendment rights of models, actors, artists, photographers, and filmmakers are surely not overborne by the Commonwealth's interest in protecting minors from the risk of sexual abuse and exploitation, especially in view of the comprehensive set of laws targeted at those evils.[4]

---

[2] See, e. g., R. Thomson, Degas, The Nudes 40–53, 119–125 (1988); K. Clark, The Nude 48–49, 154–161 (1956).

[3] Numerous contemporary examples of nonpornographic photographs, films, and paintings that would invite prosecution under § 29A if produced in Massachusetts but which almost certainly caused no harm to those depicted in them are collected in App. to Brief for Law & Humanities Institute as Amicus Curiae.

[4] The utility of § 29A in preventing sexual abuse and exploitation appears dubious when assessed against the backdrop of other statutes designed to achieve the same end. Massachusetts already has laws prohibiting assault and battery, Mass. Gen. Laws § 265:13A (1986); indecent

Given that § 29A is demonstrably overbroad, the next question is whether it fairly admits of a narrowing construction or whether offending portions of the statute might be severed, leaving its legitimate core prohibition intact. The answer to this question is that a restrictive reading of the statute or its partial invalidation is beyond our power. When we sit to review a decision resting on a state court's construction of a state statute, that construction is binding on us, regardless of whether in its absence we would have read the statute in the same way or would have pruned it back before passing judgment. *Ferber*, 458 U. S., at 769, n. 24; *Erznoznik*, 422 U. S., at 216. "[W]e will not rewrite a state law to conform it to constitutional requirements." *Virginia* v. *American Booksellers Assn., Inc.*, 484 U. S. 383,

---

assault and battery of a child under 14, § 265:13B; indecent assault and battery of a child 14 or older, § 265:13H; rape, § 265:22; forcible rape of a child under 16, § 265:22A; rape and abuse of a child under 16, § 265:23; assault with intent to rape, § 265:24; drugging persons to commit unlawful sexual intercourse, § 272:3; open and gross lewdness, § 272:16; dissemination of matter harmful to minors, § 272:28; dissemination or possession with intent to disseminate visual material of child in state of nudity or engaged in sexual conduct, § 272:29B; and unnatural and lascivious acts with a child under 16, § 272:35A. Virtually every prosecution under § 29A has also involved charges under several of these other statutes. See App. to Brief for Petitioner. The marginal deterrent effect of § 29A may therefore be slight, thereby reducing the Commonwealth's interest as against the First Amendment interests in conflict with § 29A. Of course, the penalties for violating § 29A are high; in fact, however odd the underlying scale of values or predictions of deterrence may appear, the punishment for allowing a child to be photographed nude exceeds that for dissemination of matter harmful to minors, § 272:28, and unnatural and lascivious acts with a child under 16, § 272:35A, and includes a maximum prison term in excess of that for indecent assault and battery of a child under 14, § 265:13B (20 years under § 29A versus 10 years under § 265:13B). It is questionable, however, what marginal difference the unusual stiffness of these penalties makes in forestalling the production of pornography or the sexual abuse of children, which are often punishable under separate statutes. Section 29A's most significant deterrent effect may well be on constitutionally protected conduct.

397 (1988) (certifying interpretive questions to Virginia Supreme Court before ruling on First Amendment facial attack). In this case, § 29A's prohibition on causing or allowing a minor to pose naked is unambiguous, and the Massachusetts Supreme Judicial Court expressly held that it forbids the various forms of constitutionally protected conduct just described. 401 Mass. 602, 605, 518 N. E. 2d 836, 838 (1988). In addition, although the phrase "to pose or be exhibited in a state of nudity" might easily have been excised, the court refused to sever and delete it, over the protest of three dissenters. *Id.*, at 611, n. 4, 518 N. E. 2d, at 841, n. 4 (O'Connor, J., dissenting). We have no choice but to accept these authoritative pronouncements in adjudging the validity of § 29A.

The test we employ is familiar. Because "conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U. S., at 615. See also, *e. g.*, *Board of Airport Comm'rs of Los Angeles* v. *Jews for Jesus, Inc.*, 482 U. S. 569, 574 (1987); *Houston* v. *Hill*, 482 U. S. 451, 458 (1987); *Ferber*, *supra*, at 769. We will not topple a statute merely because we can conceive of a few impermissible applications. See *City Council of Los Angeles* v. *Taxpayers for Vincent*, 466 U. S. 789, 800, and n. 19 (1984). The possibility of a substantial number of realistic applications in contravention of the First Amendment, however, suffices to overturn a statute on its face. In this regard, it bears emphasizing that "the penalty to be imposed is relevant in determining whether demonstrable overbreadth is substantial." *Ferber*, 458 U. S., at 773. Although "the fact that a criminal prohibition is involved does not obviate the need for the inquiry or *a priori* warrant a finding of substantial overbreadth," *ibid.*, it does appreciably shrink the amount of overbreadth we will find constitutionally tolerable, particularly when the penalty is se-

vere.   See also *Houston* v. *Hill, supra,* at 459 ("Criminal statutes must be scrutinized with particular care").[5]

In this case, there is no gainsaying the gravity of the penalties meted out for violations of § 29A.   Infractions carry a fine of between $10,000 and $50,000, a prison term of between 10 and 20 years, or both.   Respondent was himself sentenced to 10 years' imprisonment for taking fewer than a dozen snapshots of his stepdaughter, which he apparently showed no one except the complainant.   The severity of these sanctions significantly reduces the degree of overbreadth that the Constitution permits.

One can also readily adduce actual examples of protected conduct within § 29A's compass.   Parents photograph their children without abusing them sexually in Massachusetts as elsewhere.   The arts flourish there.   Four nudist clubs affiliated with the American Sunbathing Association alone have been established in the Commonwealth, Brief for American Sunbathing Association as *Amicus Curiae* 2, and there may well be others.

The only question that might give one pause is whether the statute's overbreadth is substantial.   Unhappily, our precedents provide limited guidance in resolving this issue, because substantiality cannot be defined with exactitude and

---

[5] In considering a facial challenge of this kind, we have no reason to decide, of course, whether respondent's own conduct may legitimately be proscribed.   Nor is it for us to say what exactly Oakes did when the evidence is sharply conflicting, particularly when we are remanding the case for further consideration of his as-applied challenge.   JUSTICE SCALIA's statement that "the defendant here apparently intended to send his stepdaughter's photograph" to one of the "pornographic magazines that use young female models," *ante,* at 588, therefore seems to me inappropriate. The only record support for this assertion of which I am aware is the complainant's testimony at trial, ambiguous with respect to Oakes' intentions regarding the photographs at issue here, that "[h]e wanted to make me big for Playboy Magazine."   App. 25a.   In any event, nothing this Court says should be taken to constrain the power of the Massachusetts courts to determine facts on remand.

little overlap exists between the factual situations presented in our previous overbreadth cases and the circumstances confronting us here. But several considerations that have led us to strike down laws by reason of overbreadth tug with equal force in this case, strongly suggesting that § 29A cannot stand as it was written at the time respondent photographed his stepdaughter.

In *Houston* v. *Hill, supra,* at 464–466, we asked whether the sweeping nature of an ordinance making it a criminal offense to oppose, abuse, or interrupt a policeman in the performance of his duties was essential to achieve its ends, or whether a more narrowly tailored law could have attained the same objectives without abridging First Amendment freedoms to the same extent. Our finding that the law could have been drafted more tightly without sacrificing the achievement of its legitimate purposes impelled us to pronounce it fatally overbroad. Section 29A suffers from the same flaw. Its blanket prohibition on permitting minors to pose nude or employing nude models, without regard to the adult's intentions or the sexually explicit nature of the minor's conduct, nets a considerable amount of protected conduct. The statute can, moreover, easily be truncated. As the plurality describes, *ante,* at 582–583, and n. 2, Massachusetts itself has recently amended § 29A to lessen its threat to protected conduct by requiring that an adult act with "lascivious intent" to come within the statute's prohibition.[6] Mass. Gen. Laws § 272:29A(a) (Supp. 1988). Alternatively, the Commonwealth could have followed the advice offered by the Justice Department in 1977. In considering legislation designed to combat the sexual exploitation of children in photographs and films, the House of Representatives initially considered banning the interstate dissemination, or the taking of photographs with intent or reason to know that they will be transported in interstate commerce, of children in a state of

---

[6] I venture no views as to the constitutionality of § 29A as amended.

"'nudity . . . depicted for the purpose of sexual stimulation or gratification of any individual who may view such depiction.'" See H. R. Rep. No. 95–696, p. 21 (1977) (quoting H. R. 4571, 95th Cong., 1st Sess. (1977)). The Justice Department opposed the inclusion of this provision on the ground that "it would be difficult to determine by what standard the 'sexual stimulation or gratification' could be assessed." H. R. Rep. No. 95–696, at 21 (statement of Deputy Assistant Attorney General Keeney). The Justice Department suggested that "lewd exhibition of the genitals" be used in its place, *ibid.*, and the House heeded that recommendation. Massachusetts could have followed the same course and modified § 29A's reference to simple nudity, thereby aligning the law with the New York statute we upheld in *Ferber*. The availability of such simple correctives renders the statute's overbreadth less acceptable.

Together with the stern sanctions § 29A imposes, the ease with which its unconstitutional applications might be eliminated lowers the hurdle respondent must clear in proving substantial overbreadth. By the standards set in our earlier decisions, that proof has in my judgment been made. The abundance of baby and child photographs taken every day without full frontal covering, not to mention the work of artists and filmmakers and nudist family snapshots, allows one to say, as the Court said in *Houston* v. *Hill*, 482 U. S., at 466–467 (citation omitted), that "[t]he ordinance's plain language is admittedly violated scores of times daily, yet only some individuals—those chosen by the police in their unguided discretion—are arrested."

Indeed, even if I were less confident that the statute was routinely violated by protected conduct—and the test, of course, is the relative frequency of such violations, not what we believe is the likelihood that such violations will in fact be prosecuted—I would reach the same conclusion. In *Erznoznik* v. *City of Jacksonville*, 422 U. S. 205 (1975), we struck down for overbreadth a statute making it a public nuisance to

show films at a drive-in theater displaying bare buttocks, pubic areas, or female breasts, if the screen was visible from a public area. By way of justification we said: "[The statute] would bar a film containing a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous. The ordinance also might prohibit newsreel scenes of the opening of an art exhibit as well as shots of bathers on a beach. Clearly all nudity cannot be deemed obscene even as to minors." *Id.*, at 213. We saw no reason to inquire into the frequency with which such scenes appeared at drive-in movies in Jacksonville; the fact that they might be shown, and sometimes were shown, was enough. The amount of protected conduct that occurs and quite plainly is covered by § 29A is undoubtedly far greater than the speculative occurrences we found sufficient to establish substantial overbreadth in *Erznoznik*, where, in addition, the attendant penalties were puny by comparison. Thus, even granted a stingy estimate of the extent of § 29A's overbreadth, the statute must fall. I would affirm the decision of the Massachusetts Supreme Judicial Court.