D.W. NELSON, Senior Circuit Judge,
concurring in part and dissenting in part:
I only disagree with the majority opinion on one point: whether we lack jurisdiction to hear Szabo’s overbreadth defense. Because I believe we do have jurisdiction, I respectfully dissent.
The right to bring an overbreadth challenge is an important safeguard of civil liberty. By invalidating unfairly vague and far-reaching statutes, it serves to protect the liberty interests of those not before the court, and provides legislative bodies burdening speech with a compelling reason to draft narrowly tailored laws. Massachusetts v. Oakes, 491 U.S. 576, 586, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989) (controlling portion of opinion by Scalia, J., concurring in the judgment in part and dissenting in part). Thus, a defendant retains the right to bring an overbreadth challenge to the law underlying her prosecution even if her own conduct is not protected by the First Amendment. Id. at 586-88, 109 S.Ct. 2633; Bigelow v. Virginia, 421 U.S. 809, 815-16, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975) (“This Court often has recognized that a defendant’s standing to challenge a statute on First Amendment grounds as facially overbroad does not depend upon whether his own activity is shown to be constitutionally privileged.”).
Szabo cannot raise his overbreadth argument in these proceedings, according to the majority, because Szabo should have pursued this defense by filing a civil lawsuit in the Federal Circuit before he was even indicted. I disagree. The relevant statutory framework does not evince the clear congressional intent required to deprive us of jurisdiction to conduct constitutional judicial review. Moreover, the doctrine of ripeness would have barred any pre-enforcement civil lawsuit. And even if it would not, a civil lawsuit would have been an inadequate substitute for litigating this defense in criminal proceedings, where Szabo has the right to counsel.
But what worries me most is that the majority’s holding gives Congress broad power to require a court to exercise criminal jurisdiction but prevent it from applying the Constitution. This holding contradicts Article III of the Constitution and our traditional conception of judicial power.
I; Jurisdiction Exists Because Szabo had No Prior and Adequate Opportunity for Review
When Congress centralized judicial review of VA rules and regulations in the Federal Circuit, it incorporated a savings clause from the Administrative Procedures Act designed to ensure that judicial review would remain available to criminal defendants who did not have a “prior [and] adequate ... opportunity” for review. 38 U.S.C. § 502; 5 U.S.C. § 703. This exception to exclusive Federal Circuit jurisdiction is a sensible way to streamline enforcement proceedings and ensure that criminal defendants have a full and fair opportunity to be heard.
*1010 To me, it seems clear that no such opportunity existed in this case. Szabo was charged with disorderly conduct after engaging in a spontaneous outburst at a VA hospital. He had no plan to engage in disorderly conduct, and no reason to anticipate a prosecution for disorderly conduct. Prior to these proceedings, Szabo thus had no reasonable chance to assert his claim that the VA disorderly conduct regulation is unconstitutionally overbroad. We should therefore conclude that jurisdiction to hear his overbreadth argument exists in these proceedings.
The majority concludes, however, that Szabo could have asserted his overbreadth challenge in a pre-emptive civil lawsuit in the Federal Circuit, and that we therefore lack jurisdiction over his overbreadth defense because he had a prior and adequate opportunity to assert it. I cannot agree.
First, any pre-enforcement challenge would have been barred by the doctrine of ripeness. When a plaintiff fearing prosecution under a law seeks pre-enforcement judicial review, ripeness generally requires the plaintiff to have a “concrete plan to violate the law in question.” Protectmarriage.com v. Bowen, 752 F.3d 827, 889 (9th Cir.2014) (quoting Thomas v. Anchorage Equal Rights Com’n, 220 F.3d 1134, 1139 (9th Cir.1999)). Here, however, Szabo had no “concrete plan” to violate the law; his violation was a spontaneous outburst. A court hearing his pre-emptive lawsuit would be confronted with a case where the plaintiff asserted that the doctrine of ripeness was satisfied because maybe, someday, contrary to his plans and intentions, he would violate the VA’s regulation. Such a lawsuit, where “the injury at issue is speculative, or may never occur,” is precisely what the doctrine of ripeness is meant to bar. Id.
The majority claims that Szabo would have been able to bring a pre-enforcement challenge because the VA regulation was published, Szabo had been “disciplined” due to disruptive behavior, and was required to have a police escort. But the existence of a proscriptive law does not make a dispute ripe. Wolfson v. Brammer, 616 F.3d 1045, 1058 (9th Cir.2010) (“[T]he mere existence of a statute is insufficient to create a ripe controversy.”). Moreover, the majority does not point to a single past instance in which Szabo was threatened with prosecution for disorderly conduct, which is what our precedent requires. Thomas, 220 F.3d at 1139 (noting that a “generalized threat of prosecution” is not sufficient, and that courts look for “a specific warning or threat to initiate proceedings”). If anything, past violations of the law coupled with non-enforcement weigh against a finding of ripeness. See id. at 1141. Furthermore, the need for police supervision may suggest some propensity for disruptive behavior, but the majority cites no case finding that a pre-enforcement dispute is ripe solely due to a plaintiffs propensity to violate the law. Additionally, since a police presence would make Szabo more likely to follow the law, not more likely to violate it, Szabo’s police escort cuts against a finding of ripeness based on propensity alone.
Second, a pre-emptive civil lawsuit in the Federal Circuit would not have provided an “adequate” opportunity for review. 5 U.S.C. § 703. To determine the adequacy of an opportunity for judicial review under 5 U.S.C. § 703, courts should conduct a case-by-case analysis to determine whether collateral proceedings are a suitable substitute for review in enforcement proceedings. See H.R.Rep. No. 79-1980, pt. 4, at 42 (1946) (a prior opportunity for review must be “adequate to the case ”) (emphasis added); S.Rep. No. 79-752, pt. 4, at 27 (1946) (same). Here, Szabo is an indigent criminal defendant, and thus he had a right to appointed counsel to assist him with his defense. Gideon v. Wain *1011 wright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Because this right is “fundamental and essential to a fair trial,” id. (quotation marks omitted), review in the Federal Circuit could be “adequate to the case” only if Szabo also had a right to appointed counsel in those proceedings. But no such right exists. While Szabo did enjoy the assistance of counsel in his criminal proceedings, the majority’s holding would cause Szabo to confront the power and sophistication of the United States on his own. This amounts to a deprivation of the right to counsel, and therefore pre-enforcement Federal Circuit review would not have provided an “adequate” opportunity for review.
Third, even if it were legally possible for Szabo to obtain pre-enforcement review in the Federal Circuit, the majority cannot dispute the evident impracticality and unrealistic nature of this scenario. Szabo is an indigent criminal defendant who had neither the means nor the motive to pursue a pre-emptive lawsuit in a court on the other side of the country. • By concluding that Szabo nonetheless had a prior “opportunity” to obtain judicial review, the majority has ventured to the boundaries of that word’s meaning.
By adopting this interpretation of the term “opportunity,” the majority’s holding contravenes the principle that constitutional judicial review is presumed to be available unless Congress’ contrary intent is clear. Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In 5 U.S.C. § 703, Congress has set out an ambiguous standard under which jurisdiction to conduct judicial review exists in enforcement proceedings unless the defendant had a prior and adequate opportunity for review. The hazy line drawn by this statute stands in marked contrast to instances where Congress has made its intent clear. See, e.g., 43 U.S.C. § 1652(d) (limiting jurisdiction over “claims alleging that an action will deny rights under the Constitution of the United States” to a sixty-day window); 42 U.S.C. § 7607(b)(2). Applying the presumption in favor of jurisdiction, I would conclude that we may hear Szabo’s overbreadth defense because he had no reasonable opportunity to obtain prior and adequate judicial review. By contrast, the majority’s broad interpretation of the term “opportunity” construes 38 U.S.C. § 502 and 5 U.S.C. § 703 to strip jurisdiction as broadly as possible, which is contrary to our rules of construction.
Finally, the majority suggests that Sza-bo had a “prior” opportunity for review because, post-indictment, he could have brought a “parallel” proceeding in the Federal Circuit. At best, parallel proceedings would provide a contemporaneous opportunity for review, not the prior opportunity required by 5 U.S.C. § 703. See H.R.Rep. No. 79-1980, pt. 4, at 42 (1946) (explaining that “prior” means “prior in time.”); S.Rep. No. 79-752, pt. 4, at 27 (1946) (same); see also U.S. E.P.A. v. General Elec. Co., 197 F.3d 592, 599 (2d Cir.1999). Moreover, Szabo was convicted only four and a half months after being charged, and cases filed in the Federal Circuit take on average twice as long to be resolved on the merits. United States Court of Appeals for the Federal Circuit, Median Disposition Time for Cases Decided by Merits Panels, available at http:// www.cafc.uscourts.gov/images/stories/ Statisties/med% 20disp% 20time% 20mer-its_chart.pdf. Thus, if anything, a parallel proceeding in the Federal Circuit would likely have been a “subsequent” form of review, not a “prior” form of review.
II. The Majority’s Holding Contradicts Article III of the Constitution.
The majority’s interpretation of 38 U.S.C. § 502 and 5 U.S.C. § 703 leads it to the novel holding that Congress may pre *1012 vent federal courts from applying the Constitution in an entire class of criminal cases. The majority does not cite a case where a criminal defendant has been barred under comparable circumstances from challenging the constitutionality of the law he is accused of violating. Although the majority relies heavily on Ya-kus, the Yakus Court explicitly stated that it had “no occasion to decide whether one charged with criminal violation of a ... regulation may defend on the ground that the regulation is unconstitutional on its face.” Yakus v. United States, 321 U.S. 414, 446-47, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
While this exceptional form of jurisdiction stripping might be appropriate in a narrow set of circumstances, the majority’s holding appears to apply broadly. The breadth of this holding raises several questions. What constitutional defenses can Congress require a criminal defendant to raise in the Federal Circuit? Could Congress require criminal defendants to raise all constitutional challenges to statutes and regulations in this way? The majority neither acknowledges nor addresses these questions. My concern is that the majority’s broad holding appears to approve unprecedented changes in how judicial review is conducted.
It belies our legal tradition to conclude that Congress, without any limits, can convene courts that enforce criminal laws but not the Constitution. “It is emphatically the province and duty of the judicial department to say what the law is.... [I]f a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either decide that case conformably to the law, disregarding the constitution; or con-formably to the constitution, disregarding the law; the court must determine which of these conflicting rules governs the case. This is of the very essence of judicial duty.” Marbury v. Madison, 5 U.S. 137, 177-78, 1 Cranch 137, 2 L.Ed. 60 (1803). Courts stripped of their authority to apply the Constitution are no longer part of an independent branch of government that exercises the “judicial Power of the United States.” U.S. Const. Art. III § 1; see also Estep v. United States, 327 U.S. 114, 126-27, 66 S.Ct. 423, 90 L.Ed. 567 (1946) (Murphy, J., concurring) (“Congress lacks any authority ... to command a court to exercise criminal jurisdiction without regard to due process of law or other individual rights.” (emphasis added)). Thus, by concluding that Congress may require courts to enforce criminal law but broadly strip them of the authority to apply constitutional law, the majority’s holding violates Article III of the Constitution.
Constitutional review is integral to our conception of justice and judicial power. An individual charged with a crime expects that he will be tried before a court with full authority to protect his rights by applying the law of the United States. The majority casts doubt upon these expectations, and I cannot agree.
III. Even if the We Lack Jurisdiction, We Should Stay the Proceedings to Permit Szabo to Pursue Review in the Federal Circuit.
Finally, even if we lack jurisdiction to hear Szabo’s overbreadth defense, we should not yet affirm his conviction. Instead, to insure that Szabo may obtain judicial review in a court with jurisdiction to hear this defense, we should grant his request for a stay to allow him to pursue this defense in the Federal Circuit. Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th Cir.1979).
Szabo’s request for a stay to pursue review in the Federal Circuit came late in these proceedings, but this delay is justified by the government’s changing position *1013 in this case. The government never contested the existence of jurisdiction over Szabo’s overbreadth argument in the district court. Instead, it raised this argument for the first time in a letter to the court filed less than a week before oral argument in this appeal. Szabo sought Federal Circuit review almost immediately after he learned of the government’s new position, and thus sought review in the Federal Circuit with diligence appropriate to the circumstances.
IV. Conclusion
Szabo should be permitted to raise all of his constitutional defenses in these proceedings. Because the majority reaches a contrary result, I respectfully dissent.