991 F.2d 796
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Steve RANDALL and Robert Lynch, Plaintiffs-Appellants,
v.
CITY OF COOKEVILLE, Defendant-Appellee.
 No. 92-5689.
 United States Court of Appeals, Sixth Circuit.
 March 29, 1993.
 
 Before GUY and BOGGS, Circuit Judges, and BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Two police officers, Steve Randall and Robert Lynch, appeal the dismissal of their civil rights action against their employer, the City of Cookeville, Tennessee, alleging that a city ordinance prohibiting active participation in city political campaigns violates their First Amendment rights. On appeal, the officers claim that the personnel policy suffers from vagueness and overbreadth and cannot reach their conduct in assisting the preparation of a city council candidates' public forum which resulted in the endorsement of two candidates. The trial court found the policy sufficiently clear as to the officers' conduct and not substantially overbroad, and we affirm.
 
 I.
 
 2
 This case arises from a reprimand Randall and Lynch received for violations of Cookeville's personnel policy. Plaintiffs, officers in the local chapter of the Police Benevolent Association (PBA), sought to become involved in their city's 1991 election for city council. Randall, as president of the local chapter, visited with the city manager and the city attorney to discuss the local chapter's planned activity. At that meeting, the city manager expressed concern that city police officers' participation in the PBA's proposed activity would violate the city's personnel policy.
 
 
 3
 After the meeting, Randall wrote to the city manager and advised him that the Tennessee PBA would hold a screening of city council candidates on June 7, 1991. The letter, dated May 15, 1991, stated that local Cookeville police officers would sit on a panel which would evaluate all of the candidates and then make an endorsement. The city manager responded to Randall's letter two weeks later, and asserted that any participation by city employees in organized screening of city council candidates would violate section 7.01 of the city manual.
 
 
 4
 The city manual proscribes certain political activity. It states:
 
 
 5
 Employees may individually exercise their right to vote and privately express their views as citizens. However, no employee shall solicit political campaign contributions or engage in or actively participate in any City Council election or an[y] City political campaign.
 
 
 6
 Accompanying the city manager's response was a notice which had been posted to all city employees concerning political activity. The notice stated that "[a]ny organized activity on the part of two or more employees will be considered a violation of the Personnel Policies and Procedures Manual and those that violate it will be subject to disciplinary action." (App. 86.) The notice also provided that the city's human resources department was available to answer any questions regarding proper employee political activity.
 
 
 7
 Despite all of this communication between the parties, Randall and Lynch continued to engage in political activity on behalf of the PBA. Specifically, the two assisted in arranging for the public forum, procured advertising to announce the forum, invited candidates to appear at the screening, and obtained registered voter lists to aid in the mailing of letters urging support for the candidates endorsed by the state PBA. Apparently in reaction to the city manager's letter, however, no local PBA member participated in the actual screening of city council candidates at the public forum. As a result of their actions, Randall and Lynch were issued written reprimands which stay in their respective files for two years. No other disciplinary action was taken against them, and both continue to be employed as police officers by the city.
 
 
 8
 Plaintiffs brought this suit seeking a declaratory judgment and a permanent injunction enjoining the enforcement and administration of the city's personnel policy regarding political activity. In this suit, plaintiffs alleged that the policy was unconstitutional on its face and as applied. After a bench trial, the trial court granted final judgment to the defendant. In denying the officers' vagueness challenge, the trial court found that the plaintiffs' conduct was clearly violative of the personnel policy's prohibition against active participation in a city council campaign. Further, the plaintiffs were on notice that their conduct was prohibited because of the communications between the parties. With regard to the overbreadth challenge to the personnel policy, the court stated:
 
 
 9
 The court realizes that section 7.01 is terse and lacks both specified examples of what is allowed and disallowed and definitions of its terms. The court also realizes that there will be an obscure area between conduct that is clearly permissible and that which is clearly prohibited. The court believes that the ordinance is overbroad to some extent. However, the court does not find section 7.01 substantially overbroad when judged in relation to its plainly legitimate sweep.
 
 
 10
 (App. 102-03) (footnotes omitted).
 
 II.
 
 11
 On appeal, plaintiffs continue to assert that the personnel policy suffers from vagueness and overbreadth. Specifically, they challenge words found in the policy such as "engage in," "actively participate," and "privately" as so vague that the policy has become overbroad. This vagueness allegedly "chills" the officers' speech, for they know not what activity is permissible. Further, the officers charge that the city's procedure which encourages employees to contact the city personnel department with their questions regarding interpretation of the policy acts as a prior restraint on their constitutionally protected speech.
 
 
 12
 The courts have long recognized that a public employer may constitutionally limit the political activity of its public employees. See Broadrick v. Oklahoma, 413 U.S. 601 (1973); United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers, 413 U.S. 548 (1973); United Public Workers v. Mitchell, 330 U.S. 75 (1947). Even when off duty and out of uniform, public employees may be restricted in their public political activity in the interests of an efficient government free from hints of corruption, influence, and connection. Letter Carriers, 413 U.S. at 565-66.[1] The question in this case is whether the Cookeville personnel policy regulating political activity lacks the clarity of those ordinances and regulations which have survived judicial scrutiny. Our de novo review leads us to the conclusion that the policy is neither unduly vague as applied to plaintiffs nor substantially overbroad.
 
 
 13
 Plaintiffs maintain that the facts here differ markedly from those in Broadrick and Letter Carriers. The Supreme Court's decision in those cases, according to plaintiffs, rested largely on the fact that otherwise vague statutes were clarified by interpretive rules promulgated by federal and state administrative agencies. Cookeville's ordinance stands alone, they allege, without an accompanying list of proscribed activities.
 
 
 14
 We need not reach the question of whether plaintiffs properly characterize the holdings in Broadrick and Letter Carriers, for, even if the plaintiffs are correct, Cookeville meets the test established in those cases. While it is true that Broadrick and Letter Carriers deal with statutes that have been the subject of commission and board rulings, those administrative decisions are analogous to the case-by-case interpretation undertaken by the Cookeville city manager in this case. Indeed, in Letter Carriers, the Civil Service Commission established procedures by which an employee in doubt about the validity of a proposed course of conduct could obtain advice from the commission. 413 U.S. at 580; see also Broadrick, 413 U.S. at 608 n. 7 (noting that the State Personnel Board was "available to rule in advance on the permissibility of particular conduct under the explicit standards set out [in the Oklahoma statute]").[2] Similarly, the Cookeville city manager testified that the city manual included a provision whereby an employee can receive an interpretation of provisions about which he is unsure. Thus, the Cookeville city manual is true to the teaching of Letter Carriers and its progeny in creating a procedure to instruct those who wish to conform their conduct to the policy and are unsure how to do so. We do not read Letter Carriers and Broadrick to require municipalities to do more. Indeed, as we have already stated, it is not clear that those cases even require the procedure which the city has implemented in this case.
 
 
 15
 Turning now to the officers' vagueness challenge, we find that the policy is written with sufficient clarity to reach the officers' conduct in this case. Said differently, the policy is not so vague that "men of common intelligence must necessarily guess at its meaning," Connally v. General Constr. Co., 269 U.S. 385, 391 (1926), particularly as applied to these plaintiffs.
 
 
 16
 Randall and Lynch were heavily involved in the PBA's efforts to hold a city council candidates' forum and subsequently to endorse favored candidates. See Wachsman v. City of Dallas, 704 F.2d 160, 172-73 (5th Cir.) (city ordinance prohibiting public employees from "publicly endors[ing] or actively support[ing] candidates for the city council" constitutional as applied to city employees and their organizations who endorse candidates because this differs from an individual employee's right "to endorse a candidate at a private and/or nonpolitical gathering (e.g. a Kiwanis Club meeting or a neighborhood barbecue)"), cert. denied, 464 U.S. 1012 (1983). They mailed letters to the candidates soliciting their participation, booked a room at a local hotel to house the forum, sent advertisements to the local newspaper announcing the forum, and sought out local voting lists so that letters could be sent to registered voters notifying them of the PBA's endorsement of two candidates. In addition, they had contact with city officials, who advised them their conduct constituted a violation of the personnel policy. Thus, the officers were on notice that their involvement in the candidates' forum subjected them to discipline.
 
 
 17
 Whatever the constitutionality of the Cookeville ordinance at its outside limits, the plaintiffs' conduct reaches the core of the policy's restriction on "active" participation in city council campaigns. See Broadrick, 413 U.S. at 608. They therefore may not contest on vagueness grounds an ordinance that clearly applies to them. Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").
 
 
 18
 We also find that the Cookeville policy is not unconstitutionally overbroad. This is not to say that the city policy arguably might not prohibit some constitutionally protected conduct. However, the personnel policy is not "substantially overbroad" as required by Broadrick, 413 U.S. at 615. See Parker v. Levy, 417 U.S. 733, 760 (1974). Thus, the officers' facial overbreadth challenge must fail, for the officers' conduct is within the policy's "plainly legitimate sweep." Broadrick, 413 U.S. at 615; see also Bruno v. Garsaud, 594 F.2d 1062, 1064 (5th Cir.1979) (finding it inappropriate to invalidate a statute in its entirety based on overbreadth "at the behest of one whose conduct the statute constitutionally proscribes"). To the extent that the policy does suffer from some overbreadth, it may be cured "through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." Broadrick, 413 U.S. at 615-16.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable Robert Holmes Bell, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 The plaintiffs are wrong when they assert in their reply brief that "[t]he City may not place these restrictions on its employees when they are off duty. The employees, at that point in time, become members of the general public." Such a position simply ignores Letter Carriers and Broadrick, which stand for the proposition that the government may regulate public employees even when off duty because of the overriding societal interest in an efficient, scandal-free government
 
 
 [2]
 Plaintiffs argue that procedures which encourage employees to seek guidance regarding proper political activity work a prior restraint on their speech. Such an argument lacks merit, particularly when the Supreme Court in Letter Carriers affirmed just such a procedure