Gregory **RUFF**, Russell Wood, and Linda Sanders, Plaintiffs,

v.

**CITY OF LEAVENWORTH, KANSAS,** and Lee Doehring, Defendants.

No. 93–2243–JWL.

United States District Court, D. Kansas.

July 21, 1994.

See also 854 F.Supp. 774.

1548

G. Gordon Atcheson, Blake & Uhlig, P.A., Kansas City, KS, for plaintiffs.

Robert D. Beall, Davis, Beall, McGuire & Thompson, Chtd., Leavenworth, KS, Matthew W. Tills, Kansas City, MO, for defendants.

LUNGSTRUM, District Judge.

### MEMORANDUM AND ORDER

This case presents difficult issues implicating important competing public and individual interests. The plaintiffs, Gregory Ruff, Russell Wood, and Linda Sanders, are present or former members of the police department of the defendant City of Leavenworth (the "City"), headed by the Chief of Police, defendant Lee Doehring. They have instituted this action pursuant to 42 U.S.C. § 1983 in an attempt to secure declaratory and injunctive relief for alleged violations of federal law. The thrust of their claim pertains to the City's personnel policy which seeks to prohibit "political activity" of City employees and, according to plaintiffs, is violative of the First Amendment of the United States Constitution.[1] Officers Ruff and Wood have been reprimanded under the policy for conduct allegedly falling within the policy's prohibition, and argue both that the policy is unconstitutional on its face and that it has been unconstitutionally applied to them. Plaintiff Sanders asserts that the City's present policy has had a "chilling" effect on her own First Amendment freedoms and argues that it is unconstitutional on its face. The City of Leavenworth maintains that its policy is constitutional and has been applied in a manner such as to preserve

---

1. Plaintiffs assert their rights under the First Amendment as made applicable to the states and their political subdivisions by the Fourteenth Amendment. *See Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1436–37, 16 L.Ed.2d 484 (1966).

the First Amendment freedoms of all of the plaintiffs.

A trial to the court was held in this matter on June 14, 1994, at Kansas City, Kansas, and the court is now prepared to issue its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). Although this court is extremely reluctant to strike down the expression of the will of an elected governing body and although it is convinced that the City has demonstrated a substantial interest which would justify prohibiting the actual conduct and speech engaged in here, the court must, for the reasons set forth below, find both ordinances to be unconstitutionally overbroad and the present policy vague. Consequently, the court holds for the plaintiffs.

### Findings of Fact [2]

1. Officer Ruff joined the Leavenworth Police Department in 1984 as a patrolman, but later moved up the ranks to his present position as a lieutenant. Officer Wood joined the department in 1990, but is no longer employed by the City. Plaintiff Linda Sanders has been an employee of the department since 1973 and presently holds the position of evidence custodian. She is a civilian employee of the department and lacks the authority to make arrests or carry a firearm in the course of her duties. She does not wear a uniform and has limited contact with the general public in the course of her duties.

2. On March 23, 1993, the Leavenworth City Commission voted unanimously against bringing the City under the Kansas Public Employer Employee Relations Act (PEERA), K.S.A. 75–4321, et seq.[3] About twenty-five police officers, including plaintiff Wood, attended the commission meeting. The Fraternal Order of Police Lodge No. 19 ("the FOP") sent a representative to this meeting urging the commissioners to bring the City under PEERA.[4]

3. Immediately following the meeting, Officer Wood, who was at that time President of the FOP, stated in substance that he and other officers intended to support Phil Urban and David Atkins, two non-incumbent candidates seeking election to the commission and would oppose the sitting commissioners who had voted against PEERA coverage. His remarks were reported in the March 24, 1993, edition of the Leavenworth Times, a general circulation newspaper, as follows: "'We plan to support Phil Urban and David Atkins and we plan to campaign against the commissioners who voted against this,' Wood said."

4. In February or March of 1993, FOP representatives met with commission candidates, usually for breakfast or dinner at a local restaurant. The purpose of the meetings was to learn the candidates' positions and views on issues the FOP thought important. The candidates were not asked to make promises, nor were they promised an endorsement.

5. The FOP purchased display advertisements in the March 31 edition of the Leavenworth Times and the March 31 edition of the Chronicle Shopper, another general circulation newspaper, asking voters to cast their

---

**2.** Plaintiff offered portions of the deposition testimony of Officer Wood in its case in chief at trial. Defendants counterdesignated and offered the balance of his deposition testimony. Plaintiff then objected to the admission of certain portions of that testimony which was counterdesignated. The following is the court's ruling on these objections: (1) p. 21, line 24 to p. 24, line 1, sustained; (2) p. 37, line 15 to p. 39, line 25, overruled; (3) p. 42, line 13 to p. 45, line 10, sustained; (4) p. 47, line 4 to p. 48, line 14, overruled and offer of additional testimony received; (5) p. 50, line 13 to p. 52, line 2, overruled; (6) p. 62, line 14 to line 22, sustained; (7) p. 82, line 10 to p. 86, line 18 and p. 88, line 2 to line 25, sustained.

**3.** PEERA provides that local units of government may choose to come under its coverage. K.S.A.

75–4321(c) (1989). Workers are then permitted to form "employee organizations" that meet and confer with representatives of the government over terms and conditions of employment. This process is intended to culminate in a memorandum of agreement, setting forth those terms and conditions. The process is akin to private sector collective bargaining.

**4.** The FOP Lodge No. 19 is a fraternal organization whose members are police officers below the rank of captain employed by the City of Leavenworth. The City does not recognize the organization for the purposes of developing terms and conditions of employment or departmental policy.

ballots for Urban and Atkins in the commission election. Officer Ruff drafted the text and Officer Wood edited the draft. The advertisements were not shown to or their contents discussed with the candidates or any of their campaign workers in advance of being published. They were not prepared during either of the officers working hours or using any City materials.

6. After reviewing the advertisements and Officer Wood's March 23 remark as reported in the Leavenworth Times, Police Chief Lemoine Doehring began a professional standards investigation of Officer Ruff and Officer Wood, and various other officers of the FOP, for possible violation of the City's personnel policies. It was Chief Doehring's conclusion that the officers had violated the City's policy banning certain "political activity." As a result, Chief Doehring placed letters of reprimand in the personnel files of both officers and put them on probationary status.

7. Both officers were "off-duty" when they engaged in the conduct which subjected them to discipline. No City funds or materials were used in any manner in securing the placement of the newspaper advertisements.

8. The personnel policy in effect at the time of the chief's investigation stated in pertinent part as follows:

III–3. Code of Ethics

A. Political Activity: ... Employees are permitted to join political organizations, civic associations or betterment groups or other organizations that do not endorse candidates for municipal office. Employees are not permitted to engage in any political activity involving the election of candidates for any City office, however, may [sic] participate in informational meetings involving candidates for City elective office. Employees will not visibly endorse on their person or City property candidates for any elective office while on duty.

9. The City has since revised its policy, effective January 1, 1994, to read:

III–E. Code of Ethics

A. Political Activity .... Employees are permitted to join political organizations, civic organizations, or associations,

or other organizations, but are not permitted to personally, individually, or as a representative of said organizations, publicly endorse, solicit or collect campaign funds, or voice public support at public meetings or through the media or by other distributed materials, campaigning for or against candidates for any City elective office. However, employees may participate in informational meetings involving candidates for City elective offices. The purpose of this prohibition is to prohibit political activities by City employee[s] in City elections of City elective offices.

Employees shall not visibly endorse on their person or City property candidates for any elective office while on duty.

10. The letter of reprimand to Officer Wood, dated May 4, 1993, stated in essence that it was Chief Doehring's conclusion that Officer Wood's verbal statements published in the Leavenworth Times and his participation in placement of the advertisements violated Personnel Rule, III–3, Subsection A, expressly prohibiting "employees of the City of Leavenworth from engaging in any political activity involving the election of candidates for any city office." In the letter of reprimand to Officer Ruff, Chief Doehring stated he had found the officer to be in violation of the same personnel rule for his participation in advertisements that specifically endorsed candidates for the City Commission. Both officers were instructed to refrain from "this type of conduct" in the future and informed that any subsequent violation of personnel or department rules would invoke disciplinary action in the form of lengthy suspension without pay or termination of employment.

11. In both letters of reprimand, Chief Doehring further stated:

Your actions and political activity seriously undermined that delicate check and balance system, and significantly damaged the credibility of the candidates, yourself and the City of Leavenworth employees. This is evident by the citizens comments in the Leavenworth Times newspaper. It has proven to be a [sic] very divisive within this department and the employee body of the City. It is my expectation you will

refrain from this type of conduct in the future.

12. Chief Doehring did not make a finding that the officers had solicited campaign funds, nor did they contribute to the campaigns of candidates endorsed. No campaign materials were distributed by these officers.

13. Chief Doehring observed some problems and disruption within the department which he considered a reaction, in part, to the conduct of Officers Ruff and Wood. Various City department heads expressed concern about the violations of the officers and expressed their opinion that the officers' behavior was inappropriate. Other police officers expressed to Chief Doehring some degree of anger towards the officers for the placement of the newspaper advertisement. Chief Doehring testified that he observed some overall decline in work productivity simultaneous to the developing controversy over the City's failure to recognize PEERA. He attributes the decline in work productivity to a variety of factors, one being the controversy stirred by the conduct of Officers Ruff and Wood and their involvement in the endorsement of specific candidates for the City Commission.

14. Chief Doehring also testified that it was his opinion that the newspaper advertisements were misleading, that they used very general language and that they left those who viewed them with the inaccurate impression that all police officers supported particular candidates.

15. Chief Doehring testified that the City's policies regarding "political activity" are intended to promote the credibility and integrity of the police force and the police department in the eyes of the public and also to promote and maintain a certain degree of harmony among police department employees within the department itself.

16. City Manager, Walter Mark Pentz, testified that officers expressed to him their belief that the conduct of Officers Ruff and Wood was unprofessional and that they were somewhat embarrassed by the conduct and sought to disassociate themselves from any link to the advertisements.

17. Mr. Pentz testified that it is his belief that the City departments are still subject to the adverse influence of patronage even though a civil service system has been instituted successfully in the City and has been in place for many years. Promotions are not covered by the civil service commission, nor is the budget or the allocation of resources. Punishment and reward based on political patronage remains possible even if it is by more indirect means than was utilized in the past.

18. Mr. Pentz testified that the City's policies are concerned with public perception. They prevent even the perception that deals are made by or with those in charge of public services, particularly law enforcement, or that bargains are struck or favors done. It is intended to foster public confidence in City services which will be provided to all without favoritism to some. The policy also serves to promote stability in employment by minimizing potential divisiveness among employees.

19. There are no regulations or guidelines promulgated by the City explaining the meaning of the term "political activity" other than what exists in the provision itself. There are no authoritative interpretive guidelines published or in any way available to aid City employees in understanding what is or is not prohibited by the provision.

20. Plaintiff Sanders is aware of the discipline imposed on Officers Ruff and Wood and has reviewed the applicable City personnel policies. She states that based on this information she would not express her personal opinion for or against any candidate who might seek election to the City Commission or engage in certain other activities regarding City elections for fear of being disciplined.

### Conclusions of Law

As the court noted at the outset, the issues to be decided here implicate important, yet competing, public and individual interests. Plaintiffs seek to preserve what they believe to be their First Amendment right to speak upon political matters and to express their views and opinions regarding the election of the commissioners of the City of Leavenworth. Defendants seek to protect what

they believe to be their right, as employer, to limit certain activities of their employees in an attempt to maximize the effectiveness and efficiency of the public services they provide. The people of the City of Leavenworth also have a stake in the outcome of this litigation. They are entitled to the fair and effective administration of the City services which they support. In deciding the issues presented, the court is forced to make fine distinctions between that speech and activity which the City is entitled to restrict and that which the First Amendment counsels it may not.

The court has taken a two step approach in analyzing the issues before it. First, the court examines whether the City's former policy was constitutional "as applied" to the conduct of Officers Ruff and Wood by engaging in a fact specific inquiry into the speech and conduct of the officers and the interests of the City in preventing that speech and conduct. The court concludes that, as applied to these officers, the City's ban on "political activity" would not be unconstitutional. In other words, the court finds that the City could validly prohibit its officers from endorsing, on behalf of an organization of City officers, a particular candidate in a City election in a newspaper advertisement or by commenting directly to a newspaper reporter. However, for the purposes of this lawsuit, the inquiry does not end there.

The court must also consider whether the City's ban (either the former or present policy) is unconstitutional "on its face". If so, it may not be applied in any manner and any discipline imposed according to it must be rescinded. After careful consideration, the court finds that the City's ban is unconstitutional on its face. The import of the court's decision is that, while the City is constitutionally permitted to limit its employee's speech and activities regarding City elections to a certain extent, the extent to which it has chosen to do so in these ordinances is unconstitutional.

### I. Constitutionality of the City's Ban as Applied to Officers Ruff and Wood

An employee does not abandon his or her First Amendment rights simply by agreeing to work for a public entity. A city may not discipline an "employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987); *see also Connick v. Myers*, 461 U.S. 138, 143–44, 103 S.Ct. 1684, 1688–89, 75 L.Ed.2d 708 (1983) (noting the Court's now longstanding rejection of Justice Holmes' comment that a police officer "may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."). At the same time, however, the realm of protected speech for public employees is much narrower than that for the general public. *See Connick*, 461 U.S. at 144, 103 S.Ct. at 1688–89; *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). The government as employer has far broader powers in regard to employees' speech than does the government as sovereign. *Waters v. Churchill*, —— U.S. ——, ——, 114 S.Ct. 1878, 1886, 128 L.Ed.2d 686 (1994); *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 564, 93 S.Ct. 2880, 2889–90, 37 L.Ed.2d 796 (1973) ("[T]he government has an interest in regulating the conduct and the speech of its employees that differs significantly from those it possesses in connection with regulation of the speech of the citizenry in general.").

The United States Supreme Court has recognized that government entities may constitutionally restrict certain "political activity" of their employees. In *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973), the Supreme Court upheld the validity of the Hatch Political Activities Act, 5 U.S.C.A. §§ 7321–7327 (1980) ("Hatch Act"), finding that federal employees could constitutionally be prohibited from taking formal positions in political parties, from undertaking substantial roles in partisan political campaigns and from running for office on partisan political tickets. 413 U.S. at 565, 93 S.Ct. at 2890. In *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), the Court upheld similar restrictions on Oklahoma state employees under an Oklahoma statute regulating political activity.

413 U.S. at 616–17, 93 S.Ct. at 2918–19. However, the Supreme Court has not addressed specifically the constitutionality of prohibiting the conduct engaged in by Officers Ruff and Wood under the circumstances presented in this case, that is whether a City government can prohibit a police officer from placing an ad in a local newspaper on behalf of other officers endorsing a particular candidate for a City election or from making a statement which identifies himself or herself as an officer and indicates that he or she and other officers endorse a particular candidate for election.[5]

In order to determine whether the conduct of Officers Ruff and Wood was protected, the court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Letter Carriers*, 413 U.S. at 564, 93 S.Ct. at 2890. In other words, to determine whether the officers' First Amendment rights were violated, the court must weigh the interest of the officers in the speech and conduct at issue against the interest of the City in prohibiting such speech or conduct.[6]

The officers' interest in commenting on public elections is a strong one and strikes close to the heart of the First Amendment. *Buckley v. Valeo*, 424 U.S. 1, 48, 96

S.Ct. 612, 648–49, 46 L.Ed.2d 659 (1976) (political speech rests at the "core" of First Amendment); *Monitor Patriot v. Roy*, 401 U.S. 265, 272, 91 S.Ct. 621, 625–26, 28 L.Ed.2d 35 (1971) (First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office); *Williams v. Rhodes*, 393 U.S. 23, 32, 89 S.Ct. 5, 11, 21 L.Ed.2d 24 (1968) ("Competition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms."). The First Amendment reflects a national commitment to the idea that debate on public issues should be "uninhibited, robust, and wide-open." *See Waters*, —— U.S. at ——, 114 S.Ct. at 1886 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964)).[7] Moreover, the public has a vital interest in hearing these comments and in the promotion of public debate regarding local elections and the public issues which directly and powerfully affect their communities. *See id.* —— U.S. at ——, 114 S.Ct. at 1887 (government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions).

On the other hand, the City has a strong interest in ensuring that its employees "enforce the law ... without bias or favoritism for or against any political party or group or members thereof." *Letter Carriers*, 413 U.S.

5. Federal regulations which the court recognized in *Letter Carriers* to delineate the Hatch Act's prohibitions had construed the Act to prohibit "[e]ndorsing or opposing a partisan candidate for public office or political party office in a political advertisement." *Id.* at 579 n. 21, 93 S.Ct. at 2897 n. 21. The Court did not specifically find, however, that prohibiting such conduct was constitutionally valid.

6. Whether speech is protected is a question of law for the court to determine. *Connick*, 461 U.S. at 148 n. 7, 150 n. 10, 103 S.Ct. at 1690 n. 7, 1692 n. 10. The government bears the burden of demonstrating the constitutionality of its actions. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734–35; *Melton v. City of Oklahoma City*, 879 F.2d 706, 713 (10th Cir.1989), *reh'g on other grounds*, 928 F.2d 920, *cert. denied*, —— U.S. ——, 112 S.Ct. 296, 116 L.Ed.2d 241 (1991).

7. Defendant argues that the motivation of these officers in engaging in the speech and conduct at

issue here was purely personal and that their endorsement of candidates related solely to their desire to bring the police department under the coverage of PEERA. Thus, defendant argues, their speech and conduct was unprotected because it represented purely an employee dispute over personnel policies. Although the motivation of the officers may have been mixed, the court finds that the officers nevertheless engaged in conduct and speech which touches upon matters of public concern. Simply because the officers' opinions were, perhaps, in predominate part based on the City's failure to adopt PEERA, and their self interest may thus have been involved, their speech is not removed from the sphere of public concern. Whether or not a governing body will choose to engage in a form of collective bargaining type activities with its public safety employees is not a trivial matter and merits the attention of the electorate.

at 565, 93 S.Ct. at 2890; *see also Brockell v. Norton,* 732 F.2d 664, 668 (8th Cir.1984) ("[t]he public has a vital interest in the integrity of those commissioned to enforce the law").[8] Citizens have a concern for the even-handed administration and enforcement of police services, which to a significant extent involve the exercise of employee discretion in particular instances. Police officers wield a considerable amount of power by virtue of their positions, and the timing and manner in which they perform their duties may be subject to variation depending on the attitudes of the employees concerned. *See Wachsman v. City of Dallas,* 704 F.2d 160, 172 (5th Cir.) *cert. denied,* 464 U.S. 1012, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). The City has a right to ensure that the administration and enforcement of the law not be, nor even appear to be, influenced or affected by political associations employees attempt to foster. Preventing officers from endorsing, on behalf of an organization of police officers, particular candidates in a City election is closely tied to the achievement of this goal.

The City of Leavenworth also has an interest in ensuring that employment and advancement in public service depend upon meritorious performance on the job rather than on political affiliations or political involvement. Allowing promotion or advancement within the department to be influenced by or because of political affiliations impairs the efficiency of government directly, by depriving it of the services of more capable persons, and also indirectly by adverse effects on employee morale. *See Wachsman,* 704 F.2d at 166. The fact that the City of Leavenworth has in place a civil service system does not necessarily eliminate a legitimate need to restrict, to some degree, a police officer's right to connect him or herself with certain candidates by endorsing them in a City election. As the City Manager testi-

fied, the civil service system does not control the promotional system within the department, nor does it control the allocation of resources, two areas in particular in which there is a potential for political influence to creep in and affect a system determined to keep it out.

Finally, the City has an interest in the efficiency and quality of the services it provides. It is apparent from the evidence before the court at trial that the conduct of Officers Ruff and Wood stirred a considerable amount of controversy, not only among the officers themselves, but throughout the entire police department. Officers and employees were divided over the appropriateness and propriety of their activities. Simply put, not all officers agreed with the positions which were so forcefully and publicly taken by Officers Ruff and Wood regarding the City election. It is essential that a police department maintain a certain degree of harmony among its employees. It seems that preventing officers from engaging in the conduct at issue is fairly and reasonably directed at the preservation of this harmony among officers. While it may not be absolutely clear that the conduct exhibited by Officers Ruff and Wood will in every case cause significant disruption among employees or hamper communication between officers in the department to a substantial extent, the court must give some deference to government predictions of harm used to justify restrictions on employee speech in an employer/employee context. *See Waters,* —— U.S. at ——, 114 S.Ct. at 1887 ("[W]e have given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern....")

On balance, the court is persuaded that the City of Leavenworth may constitutionally prohibit its police officers from endorsing a

---

8. The court notes that it finds persuasive the reasoning of the Fifth Circuit in *Wachsman v. City of Dallas,* 704 F.2d 160 (5th Cir.1983). In *Wachsman,* the Fifth Circuit identified governmental interests served by restrictions on city employee activities in city elections and found them to be as significant as those recognized by the United States Supreme Court in *Letter Carriers.* 704 F.2d at 164–169. The court found no real distinction between the governmental inter-

ests recognized in *Letter Carriers* in the context of a partisan election and those which would be recognized in the context of a nonpartisan city election. *Id.* at 169. Thus, the court finds that the governmental interests recognized in *Letter Carriers* support the City of Leavenworth's policy restricting certain "political activity" even though the election of the City Commissioners is not partisan.

candidate in a City Commission election, on behalf of themselves and other police officers, by advertising in a newspaper support for such candidate or by making statements to a local newspaper reporter which indicate an endorsement of a particular candidate. Thus, the court finds that the City of Leavenworth's ban on "political activity" was not unconstitutionally applied with respect to the discipline imposed on Officers Ruff and Wood.

## II. Constitutionality of the City's Ban—Facial Validity

 Even though the City's past policy was constitutionally applied to Officers Ruff and Wood, they are nevertheless permitted to argue that the ban is unconstitutional on its face. *Massachusetts v. Oakes,* 491 U.S. 576, 585–88, 109 S.Ct. 2633, 2639–41, 105 L.Ed.2d 493 (1989); *Broadrick,* 413 U.S. at 612–15, 93 S.Ct. at 2915–18; *Gooding v. Wilson,* 405 U.S. 518, 521, 92 S.Ct. 1103, 1105–06, 31 L.Ed.2d 408 (1972); *Dombrowski v. Pfister,* 380 U.S. 479, 491, 85 S.Ct. 1116, 1123–24, 14 L.Ed.2d 22 (1965). The overbreadth doctrine permits a party whose conduct is prohibitable to challenge an enactment because the enactment's very existence may cause others not before the court to refrain from constitutionally protected speech or expression. *Broadrick,* 413 U.S. at 612, 93 S.Ct. at 2915–16. If the policy is successfully challenged as overbroad and unconstitutional on its face, the policy must be struck and the discipline imposed pursuant to the policy must also be struck. *Gooding,* 405 U.S. at 521, 92 S.Ct. at 1105–06.[9]

 While an argument may be made that it is unnecessary to apply the doctrine when the offending provision has been repealed, this argument has been rejected by a majority of the United States Supreme Court. In *Massachusetts v. Oakes,* Justice Scalia, speaking for the majority of the justices, opined that it is necessary to address the facial validity of an overbroad provision, even if repealed, in order to prevent the "chilling" of protected speech:

> The overbreadth doctrine serves to protect constitutionally legitimate speech not merely *ex post,* that is, after the offending statute is enacted, but also *ex ante,* that is, when the legislature is contemplating what sort of statute to enact. If the promulgation of overbroad laws affecting speech was cost free ... that is, if *no* conviction of constitutionally proscribable conduct would be lost, so long as the offending statute was narrowed before the final appeal— then legislators would have significantly reduced incentive to stay within constitutional bounds in the first place.

491 U.S. at 586, 109 S.Ct. at 2639–40. In addition, the majority believed it impermissible to allow punishment which is initially invalid because it was imposed pursuant to an overbroad provision, to be "resuscitated" by a later alteration of the provision. *Id.* at 584–86, 109 S.Ct. at 2639 ("I would even think it strange judicial theory that an act which is lawful when committed (because the statute that proscribes it is overbroad) can become retroactively unlawful if the statute is amended...."). The court is persuaded by the rationale of the majority that it must address the facial validity of the now repealed version of the City policy and analyze the propriety of the discipline of Officers Ruff and Wood in that context. For the reasons outlined below, the court finds that the City provision under which the officers were reprimanded is unconstitutionally overbroad and, therefore, facially invalid.

In addition, the court examines the revised City provision and finds that it, too, is uncon-

**9.** In its previous order denying summary judgment, the court did not reach the issue of the facial validity of the old provision. The court is persuaded that it is now required to address the issue despite the fact that it could be viewed as "moot" in a practical sense since a repealed provision can no longer "chill" protected speech. *See Massachusetts v. Oakes,* 491 U.S. 576, 581–83, 109 S.Ct. 2633, 2637–38, 105 L.Ed.2d 493 (1989) (opinion by Justice O'Connor) (since the special concern that animates the overbreadth doctrine is no longer present, the doctrine's benefits need not be extended to one whose conduct is not protected). In *Oakes,* a divided Supreme Court struggled with this issue. The majority of justices found, contrary to Justice O'Connor's position, that the overbreadth defense remains available even when the enactment which is alleged to run afoul of the doctrine has been repealed. *Id.* at 585–88, 109 S.Ct. at 2639–41. Thus, the constitutionality of both the old and the new policy remain at issue before the court.

stitutionally overbroad on its face and, further, that it is impermissibly vague. Both Officer Ruff and plaintiff Sanders challenge the validity of the present City policy.[10] Both are employed by the City and desire to engage in conduct which the present policy purports to prohibit. Plaintiff Sanders asserts that she would not express her opinions either for or against candidates in City Commission elections out of fear of discipline under the policy.

Because the past and present provisions purport to prohibit a similar range of conduct, the court's analysis, as to the unconstitutional overbreadth of the provisions, applies equally to both of them. Both City provisions purport to prohibit employees from engaging in *any* "political activity" involving the election of candidates for any City office.[11] The policy under which Officers Ruff and Wood were disciplined provides, "Employees are not permitted to engage in any political activity involving the election of candidates for any City office, however [sic] may participate in informational meetings involving candidates for City elective office." The revised policy similarly states, "the purpose of this prohibition is to prohibit political activities by City employees in City elections of City elective offices." Unlike the prior policy, the revised version seems to describe some prohibited "political activities." It does not, however, indicate if the listing is representative of proscribed activities or whether it is exhaustive.[12]

For a court to find an enactment unconstitutionally overbroad, there must be a realistic danger that it will significantly compromise recognized First Amendment protections of parties not before the court. *Members of Council v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 2126–27, 80 L.Ed.2d 772 (1984). The mere fact that one can conceive of some impermissible applications of an enactment is not sufficient to render it susceptible to an overbreadth challenge. A party must show that the enactment reaches a substantial amount of protected conduct. Particularly where conduct and not pure speech is involved, "the overbreadth must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917–18. An enactment will be considered substantially overbroad if the number of applications of the provision to protected conduct is substantial in relation to the number of applications to conduct that is not protected. *ACORN v. City of Tulsa, Oklahoma,* 835 F.2d 735, 744 (10th Cir.1987).

In determining whether the City's ban on political activity reaches a substantial amount of protected speech or conduct, the court is forced to look only to the language of the provisions themselves. The City has neither promulgated nor published any interpretive guidelines for either of its provisions. There is no regulation or guideline to which City employees may turn to define what "political activity" means or what sorts of activities are prohibited under the City's ban. There is also no formal procedure or mechanism in place through which employees of the City can ask questions or gather information to

---

**10.** Although neither party questions the court's jurisdiction, the court specifically wishes to affirm its belief that it may address the constitutionality of the current City policy. A constitutional case or controversy is presented. Plaintiffs Ruff and Sanders desire to engage in specific conduct prohibited by the City's policy and the uncontroverted evidence is that they have not and will not engage in such conduct for fear of discipline. Because the court is confronted with a provision which imposes restraints on First Amendment rights, a case or controversy exists. *See Wachsman,* 704 F.2d at 162 n. 2 (5th Cir. 1983) (citing *Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)).

**11.** The term "political activity" in the Leavenworth policy has not been construed, nor could it be construed to mean "partisan political activity" as that term was used in *Letter Carriers. See Letter Carriers,* 413 U.S. at 556, 567, 93 S.Ct. at 2886, 2891. The City's elections are decidedly nonpartisan, rendering such a construction of the provision meaningless.

**12.** The court has found no case which addresses the constitutionality of a ban on "political activity" as broad as that which is before the court in this case. *Compare Reeder v. Kansas City Bd. of Police Comm'rs,* 733 F.2d 543, 545 (8th Cir. 1984); *Wachsman,* 704 F.2d at 162; *Wicker v. Goodwin,* 813 F.Supp. 676, 678 n. 1 (E.D.Ark. 1992); *McNea v. Garey,* 434 F.Supp. 95, 101–02 (N.D.Ohio 1976); *Gray v. City of Toledo,* 323 F.Supp. 1281, 1286 (N.D.Ohio 1971).

aid them in determining whether certain conduct is prohibited by the policy. *Cf. Letter Carriers,* 413 U.S. at 576–77, 93 S.Ct. at 2895–97 (detailed regulatory and administrative guidelines pertaining to the Hatch Act recognized as adding specificity to the general prohibitions of the Act) [13]; *Broadrick,* 413 U.S. at 617, 93 S.Ct. at 2918–19 (Court recognized authoritative pronouncements of state personnel board in construing Oklahoma's mini-Hatch Act and in determining the breadth of the statute); *Randall v. City of Cookeville,* 991 F.2d 796, 1993 WL 94321, at *3 (6th Cir.1993) (city manual included a provision whereby an employee could receive an interpretation of provisions about which he or she was unsure).[14]

■ On its face, the language of the policies prohibits any and all activity that may be considered "political." This language, absent any guidelines which qualify or limit it, simply sweeps too broadly. The City's policies purport to prohibit any "public" statement made by a City employee which could be construed to endorse or as voicing support for a particular candidate in an election regardless of the time, place and manner in which the statement is made.[15] In *Broadrick,* the Supreme Court found that an enactment is overbroad only when the flaw is "a substantial concern in the context of the stat-

ute as a whole," and found that in applying such a rule, the Oklahoma statute, when authoritative administrative constructions were accepted, was not so flawed. *See Broadrick,* 413 U.S. at 616 n. 14, 93 S.Ct. at 2918 n. 14. Here, the City policies' use of such sweeping terms as "political activity" and "public" without limitation strikes the court as a substantial flaw. It distinguishes these provisions from those in *Broadrick* and *Letter Carriers* and causes the City's ban to be substantially overbroad as measured in relation to its plainly legitimate sweep.

The City policies appear to prohibit an employee from standing before a fellowship meeting of a religious congregation or before a civic organization of which he or she is a member to express an opinion about the most qualified candidate for the City Commission. They would also seem to prohibit that employee from answering an inquiry at such a gathering as to whom he or she intends to vote for. The policies even appear susceptible to the interpretation that an employee is forbidden to communicate openly an opinion about or voice support for a candidate to the employee's neighbors at a Fourth of July picnic.[16]

The policies relegate employees to expressing their political views privately and

---

**13.** In *Letter Carriers,* the Supreme Court contemplated that some of the Hatch Act "provisions forbidding partisan campaign endorsements and speechmaking" might "be considered in some respects unconstitutionally overbroad" but nevertheless held that even in such a case the entire statute would not be invalidated. 413 U.S. at 580–81, 93 S.Ct. at 2897–98. The Court recognized that there was already a significant body of law interpreting the provisions on a case by case basis and providing for a more appropriate means of determining the constitutionality of the statute's outer limits. This is simply not the case here. There is no means by which to judge the outer limits of the prohibitions of the City's policy unless and until someone is disciplined under the policy and chooses to question the appropriateness of that discipline in court by filing a suit against the City.

**14.** Although at trial the City Manager, Mark Pentz, offered his opinion as to what conduct might or might not constitute "political activity" or be prohibited by the policies, there was no evidence that any City employee was privy to this information, nor that such interpretations had been formally adopted by the City.

**15.** "Employees ... are not permitted to personally, individually ... publicly endorse ... or voice public support at public meetings ... campaigning for or against candidates for City elective office." While such terms as "publicly" "public", "campaigning", "political activity" or "political activities" might be given a limiting definition in an ordinance or by regulation, or constricted by setting out specific laundry lists of prohibited activities (as was done by the City of Dallas in the ordinance scrutinized in *Wachsman,* for example), they are not so limited here. Their plain and ordinary meaning is inclusive of virtually any but the most private of communications. *See* e.g., Webster's Third International Dictionary, 1836 (1983) ("publicly" defined as "in a manner observable by or place accessible to the public; *openly,* obviously").

**16.** By listing these examples here for illustrative purposes the court does not take a definitive position on whether or not a government employer could ever justify an interest in prohibiting some or all of these categories of speech.

force them to refrain from expressing an opinion on City elections in "public." The City has offered no evidence to show that it has an interest in prohibiting *all* speech of its employees regarding a City election that is "publicly" made. The City has made no showing that it has a substantial interest in prohibiting an employee from voicing support for a candidate at any and all nonpolitical gatherings which may also be somewhat "public" in nature regardless of the circumstances. *See Wachsman,* 704 F.2d at 172 (5th Cir.1983) (provision of municipal charter prohibiting city employees or associations of city employees from endorsing city council candidates was unconstitutional insofar as it prohibited individual city employees from endorsing candidates at private and/or nonpolitical gatherings).

The term "political activity" as used in the City's policies at issue here, purports to prohibit a broad spectrum of activity, a substantial amount of which is protected. Both provisions extensively and substantially interfere with a City employee's clear First Amendment right to express a personal opinion on political subjects and candidates. *See Letter Carriers,* 413 U.S. at 561, 93 S.Ct. at 2888 (all persons covered by the Hatch Act are free to express their opinions on all political subjects and candidates). The court finds that there is a realistic danger that the City's policies will significantly compromise recognized First Amendment protections and, thus, holds that the provisions are unconstitutionally overbroad on their face. The court recognizes that the City of Leavenworth has a significant interest in the orderly functioning of its police force and various other agencies; however, its significant interest must be secured through policies which are more narrowly drawn and which more specifically identify the conduct which is prohibited.[17]

▮▮▮▮ In addition, and especially to the extent that the apparently broad prohibitions of the ordinance could be applied more narrowly by ad hoc interpretation, the court finds that the present City policy is impermissibly vague. A statute or ordinance is unconstitutionally vague when it uses "terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Constructing Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Such a provision violates due process of law because it neither affords fair notice to potential violators nor provides standards for enforcement. *Id.* Statutory vagueness is especially problematic when it chills the exercise of First Amendment rights. *Baggett v. Bullitt,* 377 U.S. 360, 372–73, 84 S.Ct. 1316, 1322–23, 12 L.Ed.2d 377 (1964).

The court finds that the City's present policy is unconstitutionally vague because, if it is not meant to sweep as broadly as this court believe it does, men and women of common intelligence are forced to guess at its meaning. The words of the policy alone, without any interpretive guidelines or any mechanism through which an employee can inquire as to the appropriateness of certain conduct in relation to the provision, is not specific enough to afford fair notice or fair warning to the employees of the City of Leavenworth. City employees are left to speculate as to what conduct their employer might consider "political" or "campaigning" and what speech regarding City Commission elections their employer might consider "public."[18] "The root of the vagueness doctrine is a rough idea of fairness." *Colten v.*

17. The City's policies are not readily subject to a narrowing construction; therefore, the court declines to even attempt to narrowly construe the policies in order to avoid striking them *in toto. See Nat'l Gay Task Force v. Bd. of Educ. of City of Oklahoma City,* 729 F.2d 1270, 1275 (10th Cir. 1984) (a statute is saved from a challenge to its overbreadth only if it is "readily subject" to a narrowing construction); *see also Gooding,* 405 U.S. at 520, 92 S.Ct. at 1104–05 (federal court lacks jurisdiction to authoritatively construe state statute or ordinance).

18. For example, even if the City could justify prohibiting a formal speech or statement by an

employee who is a member of a civic club to that club on the subject of the fitness of candidates for elected City office, under its current wording would the employee also violate the policy if he or she participated in a discussion at a table over luncheon at the club which *touched on that issue?* Would it depend on how many people were at the table? How loudly the employee spoke? Whether certain buzz words of endorsement or opposition were used? How does the employee know when he or she crosses the line— and doesn't that then lead a prudent employee

*Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972). It is simply unfair to require City employees to guess what conduct would or would not subject them to discipline.

### Conclusion

The court declares those portions of the former and current City policies blanketly prohibiting City employees from engaging in "political activity" or "activities" with respect to City elections to be unconstitutional. The City is enjoined from enforcing that portion of the existing policy and also from enforcing the provisions which entirely prohibit employees, without limitation or definition, from personally, in an individual capacity, "publicly" endorsing or voicing "public" support at "public meetings" or "campaigning" for or against candidates for city elective office. In addition, the City is ordered to rescind the discipline imposed on Officers Ruff and Wood. Finally, the court orders that plaintiffs recover their costs and expenses in this action, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988, and the parties are directed to follow D.Kan. Rule 220 in resolving the fee issue.

**IT IS THEREFORE ORDERED BY THE COURT** that judgment be entered in favor of plaintiffs.

who wishes to avoid censure to simply remain mute?