**Carroll MOORE, Plaintiff,**

v.

**CITY OF ASHEVILLE, NORTH CAROLINA; James L. Westbrook, Jr., in his official capacity as the City Manager of Asheville, North Carolina; and Asheville Police Department, Defendants.**

**No. CIV. 1:03CV218.**

United States District Court,
W.D. North Carolina,
Asheville Division.

Nov. 13, 2003.

Robert M. Schmidt, Laurinberg, NC, Mathew D. Staver, Erik W. Stanley, Rena Lindevaldsen, Liberty Counsel, Longwood, FL, for Plaintiff.

Curtis W. Euler, McGuire, Wood & Bissette, P. A., Sharon Tracey Barrett, Patla, Straus, Robinson & Moore, Asheville, NC, for Defendants.

### MEMORANDUM OF OPINION

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiff's motions for declaratory judgment, preliminary injunctive relief, and waiver of posting security to obtain a preliminary injunction, filed on August 28, 2003, and the Defendants' Motion to dismiss, filed October 6, 2003. Responses have been filed, and the matters are ready for resolution.

## I. STATEMENT OF FACTS

Plaintiff Carroll Moore, a carpenter who resides in Tuckasegee, North Carolina, has regularly engaged in street preaching for the past seven years. Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Damages ("Complaint"), ¶¶ 9, 14, 17. Plaintiff describes his "street preaching" as "[sharing] his faith by verbal means with those he meets on the street, sidewalks and other public right-of-ways." *Id.,* ¶ 16.

On the afternoon of March 29, 2003, Plaintiff began preaching near Pritchard Park, in downtown Asheville, North Carolina, on a public right-of-way. *Id.,* ¶ 28. At that time, a permitted event was taking place in Pritchard Park. *Id.,* ¶ 30. A police officer told Plaintiff that he would have to move to the other side of the street to continue his preaching. *Id.,* ¶ 31. Plaintiff did so, and although he claims he was not selling any type of merchandise and was not soliciting donations, he was later cited for "street vending or peddling" in violation of § 10–84 of the Asheville City Code of Ordinances ("Code"). *Id.,* ¶¶ 32, 33, 35; Exhibit I, *attached to* Complaint.

Plaintiff was fined $50, which he paid. *Id.,* ¶ 36.

On the afternoon of April 19, 2003, Plaintiff again began preaching at the City County Plaza in downtown Asheville. *Id.,* ¶ 37. A permitted event was taking place in front of City Hall. *Id.,* ¶ 39. An Asheville police officer cited Plaintiff for using a "drum, loudspeaker or other instrument or device for the purpose of attracting attention by creation of noise to any performance, show, or sale or display of merchandise" in violation of Code § 10–84. *Id.,* ¶ 40; Exhibit J, *attached to* Complaint. Plaintiff contends that he was not using a drum, loudspeaker, or any other instrument or device. *Id.,* ¶ 42. The fine assessed was $100. *Id.,* ¶ 41. Before paying the fine, Plaintiff appealed the citation to the Noise Ordinance Appeals Board, which upheld the citation. *Id.,* ¶¶ 44–45. Thereafter, Plaintiff paid the $100 fine. *Id.,* ¶ 46.

Plaintiff contends several Code provisions are unconstitutional on their face and/or as applied. The first is § 16–4 ("Public Speaking Ordinance"), which provided that

> No person shall deliver a sermon, lecture, address, or discourse or give any public demonstration, exhibition or entertainment nor shall any person . . . advertise any entertainment, show, or public sale . . . on the streets, alleys, sidewalks, public squares or any public grounds of the city, without having first obtained the written permission of the city manager. Such permission may at any time be revoked by the city manager if in his opinion the good morals and order of the city so demand.

Exhibit A, *attached to* Complaint. Plaintiff was not charged under this ordinance, and the City of Asheville repealed the Public Speaking Ordinance on October 14, 2003. Defendants' Supplemental Memo In Support of Motion to Dismiss, filed October 17, 2003.

Plaintiff further contends that §§ 16–113 and 16–116 ("Picketing Ordinances") are unconstitutional, although he was not cited under these ordinances. Section 16–113 defines "picketing" as "the stationing of any person by standing, lying, walking, sitting, kneeling, bending or in any other similar manner at a particular place so as to persuade, or otherwise influence another person's actions or conduct, or to apprise the public of an opinion or message." Exhibit B, *attached to* Complaint. Section 16–116 provides that picketing is allowed provided that it is "conducted only on sidewalks or other city-owned areas normally used or reserved for pedestrian movement," that "[p]icketers . . . observe the right of non-picketers to utilize the public rights-of-way," and that "[p]icketers shall walk in single file and not abreast." Exhibit C, *attached to* Complaint. It also states that "[p]icketers are encouraged to provide notice to the chief of police of intent to picket." *Id.* Finally, it provides that when "the free passage of any street or other public area in the city shall be obstructed by picketers" or "by a crowd," the "persons picketing" or the "persons composing such crowd" "shall disperse or move along when directed to do so by a police officer." *Id.* However, "[n]othing in this section shall prohibit any person from reconvening after dispersing so long as free passage of any street or other public area is not obstructed." *Id.*

Finally, Plaintiff claims that §§ 10–83–10–85 ("Noise Ordinances") are unconstitutional as applied to him. Section 10–83 provides that "[e]xcept as allowed in this article, no person shall willfully engage in any activity on any premises or public area in the city, which activity produces or constitutes a noise disturbance on occupied neighboring premises or public area." Ex-

hibit D, *attached* to Complaint. More specifically, § 10–84 bans, among other things, "[s]treet vending or peddling" and "[t]he use of any drum, loudspeaker or other instrument or device for the purpose of attracting attention by creation of noise to any performance, show, or sale or display of merchandise." Exhibit F, *attached to* Complaint. However, § 10–85 specifies that "[u]namplified noncommercial speeches made from a fixed location in non-residentially zoned areas" do not violate § 10–83. Exhibit G, *attached to* Complaint.

Section 10–86 provides for a Noise Ordinance Appeals Board ("Appeals Board") to which a person charged under the Noise Ordinances may appeal. Section 10–86 also provides that a decision of the Appeals Board may be appealed to the City Manager. Under North Carolina General Statutes § 1–269, an individual is entitled to request the superior court to grant *certiorari* and review a decision of the city manager pertaining to violations of the Noise Ordinances. *See Russ v. Bd. of Educ. of Brunswick County,* 232 N.C. 128, 130, 59 S.E.2d 589, 591 (1950).

## II. PROCEDURAL HISTORY

As stated above, Plaintiff filed his complaint, along with motions for declaratory judgment, preliminary injunctive relief, and waiver of posting security to obtain preliminary injunctive relief on August 28, 2003. The Defendants moved to dismiss under the *Younger* abstention doctrine and Federal Rule of Civil Procedure 12(b) on October 6, 2003.

## III. DISCUSSION

### A. Motion to dismiss

#### 1. The Noise Ordinances.

■ Defendants claim that the doctrine adopted in *Younger v. Harris,* 401 U.S. 37,

91 S.Ct. 746, 27 L.Ed.2d 669 (1971), mandates that this Court abstain from hearing Plaintiff's claims regarding the Noise Ordinances. Under *Younger,* a federal court must not interfere with a state proceeding by awarding injunctive or declaratory relief where the proceeding is ongoing, implicates important state interests, and provides an adequate opportunity for the plaintiff to litigate his federal claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Martin Marietta Corp. v. Maryland Comm. on Human Relations,* 38 F.3d 1392, 1396 (4th Cir.1994).

Plaintiff argues there is no ongoing state proceeding because he did not appeal his initial citation and has ceased pursuing the appeal of his second citation. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, filed October 23, 2003, at 3. Plaintiff's argument raises the issue of whether the mere availability of a remedy at the state level, even if a plaintiff is not pursuing it, constitutes an ongoing state proceeding for the purpose of *Younger.* Although other circuits may hold otherwise, *see Thomas v. Texas State Bd. of Medical Examiners,* 807 F.2d 453 (5th Cir.1987); *cf. also Peachlum v. City of York, Pennsylvania,* 333 F.3d 429 (3rd Cir.2003), a district court in the Fourth Circuit has clearly held that the availability of a remedy at the state level does constitute an ongoing state proceeding. *Phillips v. Virginia Bd. of Medicine,* 749 F.Supp. 715, 724–30 (E.D.Va.1990). This is the position most consistent with the Supreme Court's interpretation of *Younger.* The Supreme Court has acknowledged that its precedent "suggests, perhaps, that an administrative proceeding to which *Younger* applies cannot be challenged in federal court even after the administrative action has become

final" if the federal plaintiff still has remedies in the state courts. *New Orleans Public Serv., Inc., v. Council of the City of New Orleans,* 491 U.S. 350, 370 n. 4, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Although the Court in *New Orleans Public Service* stated that such a suggestion came in *dicta* and did not constitute binding precedent, two justices believed that the previous "suggestion" was, in fact, binding precedent. *Id.,* at 374, 109 S.Ct. 2506 (Rehnquist, C.J., concurring); *Id.,* at 374–75, 109 S.Ct. 2506 (Blackmun, J., concurring). Since Supreme Court precedent so "suggests" and since a court in this Circuit has so held, this Court holds that an available state remedy, even if the federal plaintiff does not pursue it, is an ongoing state proceeding for *Younger* purposes.

Furthermore the present case is a more obvious one for abstention than *Phillips* and *New Orleans Public Service.* In those cases, the federal plaintiffs had actually exhausted their administrative remedies, and their cases were between the administrative and state levels. In the present case, Plaintiff has failed to exhaust his administrative remedies; he failed to appeal the first citation to the Appeals Board and failed to appeal the second one to the City Manager. Therefore, the present proceedings have even more the feel of "pending" proceedings than did the proceedings in *Phillips* and *New Orleans Public Service.*

■ Since there are pending state proceedings, the Court must abstain under *Younger* if the state proceedings implicate important state interests and give Plaintiff an opportunity to litigate his federal claims. *Middlesex, supra.* Plaintiff, quite correctly, does not argue that either of these factors is absent. For the purposes of *Younger* analysis, "important state interest" is defined broadly, and courts look to "the importance of the generic proceedings to the State." *New Orleans Public Serv., supra,* at 365, 109 S.Ct. 2506. For example, in *Younger,* the Supreme Court did not look to the importance of California's interest in preventing a person from distributing handbills; it looked to California's interest in " 'carrying out the important and necessary task' of enforcing its criminal laws." *Id.* (quoting *Younger,* 401 U.S. at 51–52, 91 S.Ct. 746). North Carolina has an important interest in reviewing and enforcing the decisions of the state and municipal agencies. Therefore, the state proceeding implicates an interest that is important to the State of North Carolina. Furthermore, since "state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the constitution of the United States," *Steffel v. Thompson,* 415 U.S. 452, 460–61, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (internal citations and quotations omitted), the proceeding in state court would provide Plaintiff with adequate opportunities to raise his federal claims for injunctive and declaratory relief. Therefore, this Court must abstain from hearing those claims.

The Court further notes that abstaining in this cases advances *Younger's* policy of preventing federal courts from deciding constitutional questions where state courts may interpret the law in a way that makes a constitutional determination unnecessary. *O'Neill v. City of Philadelphia,* 32 F.3d 785, 791 (3rd Cir.1994). If it is true that Plaintiff's speeches were unamplified non-commercial speeches from fixed locations in non-residential areas (Code § 10–83), and that he was not selling merchandise, soliciting donations, or using a drum or loudspeaker (Code § 10–84), this Court is confident that the state courts will properly apply the law. Not only does Plaintiff seem to have a greater chance of success

arguing that the Code was misapplied than he does making constitutional claims, success on those grounds would prevent this Court from having to make a constitutional determination. Furthermore, if Plaintiff's allegations as to his conduct prove true and a state court were still to deny Plaintiff's appeal, he would then have a stronger constitutional case to bring in federal court.

Plaintiff points to Code § 10–87 for the proposition that he may pursue remedies in federal court before exhausting all administrative and state remedies. That section states:

> Nothing in this article shall be construed to prevent or limit any person from seeking any remedy available in law or equity for activities that are or may be subject to regulation by this chapter, or from pursuing said remedy simultaneously with proceedings under this chapter, nor shall any of the procedures specified herein be a condition precedent to the initiation of any legal action.

Exhibit 5, *attached to* Affidavit of James L. Westbrook, Jr., filed October 6, 2003. Assuming, *arguendo,* that this provision does represent the desire of the City of Asheville to circumvent *Younger,* the City would not have the power to do so. As stated above, the State has an important interest in reviewing the determinations made by state and municipal agencies. The City of Asheville may not take away North Carolina's power to review those determinations. Therefore, despite the Code section recited above, the Court maintains that it must respect North Carolina's interest in enforcing and reviewing agency decisions and that it must, therefore, abstain from interfering with this ongoing state proceeding.

Plaintiff may argue that *Younger* should not apply because of the Supreme Court's holding in *Patsy v. Bd. of Regents of the State of Florida,* 457 U.S. 496, 507, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), that a plaintiff is not "compelled in every case to exhaust state administrative remedies before filing an action under [§ 1983]." *Id.* In *Patsy,* however, the state proceeding was a remedial one, rather than the coercive proceeding present in this case, and the rule that the Court announced in *Patsy* allowing § 1983 plaintiffs to file actions in federal court before exhausting state remedies applies only when the state proceeding is remedial. *Ohio Civil Rights Comm. v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 627 n. 2, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) (abstaining under the *Younger* doctrine because "[u]nlike *Patsy,* the administrative proceedings here are coercive rather than remedial"); *see also Cooper v. Bombela,* 34 F.Supp.2d 693, 697 (N.D.Ill. 1999) (explaining that the *Younger* doctrine exists to prevent federal courts from thwarting state efforts to hold individuals accountable for violating their laws and that *Younger* abstention, therefore, is only appropriate when the federal plaintiff is the defendant in a state court action). Because the underlying proceedings in this case are coercive proceedings against the Plaintiff for violating the Noise Ordinances, *Patsy* is inapplicable.

For the reasons outlined above, the *Younger* abstention doctrine applies to Plaintiff's claims regarding the Noise Ordinances. Therefore, this Court must refrain from granting injunctive or declaratory relief that would interfere with the state court proceedings. However, under *Younger,* it is not appropriate to dismiss actions containing claims for monetary damages; district courts should stay such actions pending the resolution of the state proceedings. *Suggs v. Brannon,* 804 F.2d 274, 279–80 (4th Cir.1986) ("[I]n order to afford plaintiffs a day in court, they should be allowed to maintain their actions for

damages.... A stay is appropriate."); *Traverso v. Penn*, 874 F.2d 209, 213 (4th Cir.1989) ("Under our decisions, the appropriate course is to abstain by staying proceedings on monetary as well as injunctive and declaratory claims."); *Stubbs v. Foley*, 998 F.2d 1010 (table), 1993 WL 261975, *2 (4th Cir.1993) ("Generally, when a plaintiff has failed to exhaust state court remedies, the case is dismissed rather than retained on the docket pending exhaustion. However, we direct the district court to stay this case pending exhaustion of state court remedies to guard against a statute of limitations problem." (internal citations omitted)); *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988) (declaring that the Third Circuit's rule that district courts should stay rather than dismiss claims for damages is "sound"). Therefore, the Court will stay Plaintiff's claims based on the Noise Ordinances pending the outcome of the state proceedings.

## 2. The Public Speaking and Picketing Ordinances.

■ The Defendants contend that Plaintiff lacks standing to challenge the Public Speaking Ordinance and the Picketing Ordinances. "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). It is true that "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution

thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' " *Id.* (quoting *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973)). However, when plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," the mere existence of a law that causes them to "feel inhibited" does not give those plaintiffs standing. *Younger*, 401 U.S. at 42, 91 S.Ct. 746.[1] In cases where the Supreme Court has allowed plaintiffs to challenge statutes without being charged under them, the plaintiffs usually have shown a threat of prosecution. *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (A law had very recently been passed that was "aimed directly at plaintiffs."); *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ("Unlike three of the appellees in *Younger* [ ], petitioner ... has been twice warned to stop handbilling ... and has been told by the police that if he again handbills ... he will likely be prosecuted."). In short, "[t]he Supreme Court has made it abundantly clear that one challenging the validity of a criminal statute must show a threat of prosecution ... [and that] the threat must be credible." *Doe v. Duling*, 782 F.2d 1202, 1205–06 (4th Cir. 1986) (internal quotation marks omitted).

■ In the present case, Plaintiff has alleged no credible threat of prosecution under either the Picketing Ordinances or the Public Speaking Ordinance. With respect to the Picketing Ordinances, Plaintiff's conduct does not appear to violate the

---

1. The precise holding in *Younger* is that a law causing such inhibition does not give plaintiffs standing to invoke a federal court's equitable power to enjoin a pending state prosecution. *Younger, supra.* It was in *Babbitt* that the Supreme Court held that the existence of such a law does not confer standing on plaintiffs to challenge the law. *Babbitt, supra,* at 299, 99 S.Ct. 2301.

ordinances in any way. The Picketing Ordinances do not regulate what people say but merely prohibit people from blocking public right-of-ways. The pleadings make no mention of Plaintiff preaching with anyone else; therefore, his concerns about not being allowed to be abreast of a fellow speaker are not well founded. It simply stretches the imagination to see how Plaintiff's conduct violates the Picketing Ordinances, and since no government official has threatened to apply those ordinances to Plaintiff, there is no credible threat of prosecution. Therefore, Plaintiff lacks standing to make claims based on the Picketing Ordinances.

■ Although Plaintiff's conduct may have technically violated the now-repealed Public Speaking Ordinance, there was no credible threat of prosecution under that ordinance either. The language above from *Younger* makes it clear that a plaintiff must allege something beyond the mere existence of a law to establish a credible threat of prosecution. *See, Younger, supra.* In *Younger,* even the fact that California was prosecuting another person under the challenged law was not enough to show a credible threat of prosecution as to other plaintiffs. *Id.* Here, Plaintiff has made no allegation that the law was applied to anyone else or that anyone threatened to apply the law to him. As such, he lacks standing to challenge the Public Speaking Ordinance.

The Court understands that "when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). Even if the repealed Public Speaking Ordinance

did give "unbridled discretion" to a government official, the Court finds no precedent to support the notion that the relaxed standing requirement from *City of Lakewood* does away with the requirement that a plaintiff face a credible threat of prosecution. In fact, the reason for relaxing the standing requirement is to counteract the "chilling" effect which occurs when a censor with unbridled discretion "intimidates parties into censoring their own speech." *Id.,* at 757, 108 S.Ct. 2138. If there is no allegation that the plaintiff or anyone else will be prosecuted under a statute giving such discretion to a censor, then there cannot be the chilling effect that the relaxed standing requirement is meant to counteract. Here, Plaintiff has made no such allegation. Therefore, the relaxed standing requirement from *City of Lakewood* is unnecessary and inapplicable.

■ Even if Plaintiff could have challenged the Public Speaking Ordinance before it was repealed, the case clearly became moot when the Asheville City Council repealed the ordinance on October 14, 2003. Supreme Court cases on the issue of whether repealing an ordinance moots constitutional challenges to that ordinance have not been consistently decided. In one line of cases, the Supreme Court classified the repeal of an ordinance as "voluntary cessation" of a challenged action and held that, in general, repealing the challenged statute will not moot the case. *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982); *Northeastern Florida Chapter of Associated Gen. Contractors of America v. City of Jacksonville,* 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). However, there are numerous Supreme Court cases that hold that repealing a challenged ordinance does, in fact, moot the challenge. *Diffenderfer v. Central*

*Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 414, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); *Bigelow v. Virginia*, 421 U.S. 809, 817–18, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); *Kremens v. Bartley*, 431 U.S. 119, 129, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977); *Pope v. Illinois*, 481 U.S. 497, 501–02, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987); *Massachusetts v. Oakes*, 491 U.S. 576, 583–84, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989); *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).

Lower courts have wrestled with this inconsistent precedent and have most often concluded that *Aladdin's Castle* and its progeny apply only when the legislative body that repealed the challenged statute gives a court reason to believe that it may reenact the statute or one substantially similar if the challenge is dismissed. *Kentucky Right to Life, Inc. v. Terry*, 108 F.3d 637, 645 (6th Cir.1997) ("This exception properly applies only when a recalcitrant legislature clearly intends to reenact the challenged regulation"); *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir.1994) ("A statutory change ... is usually enough to render a case moot .... The exceptions to this general line of holdings are rare and typically involve situations where it is virtually certain that the repealed law will be reenacted"). In a lengthy discussion of the Supreme Court's puzzling inconsistencies, the Seventh Circuit noted that in both *Aladdin's Castle* and *Northeastern Florida* there was strong evidence that the Defendant cities either intended to reenact similar legislation or had already done so. *Federation of Adver. Indus. Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir.2003). The Seventh Circuit further stated that although "some language in the *Aladdin's Castle* majority opinion perhaps suggests that mere repeal of a challenged statute does *not* moot a case[,] ... in light of both previous and subsequent cases, we find this language to be *dicta* and therefore not controlling." *Id.*, at 930 n. 5.

This Court comes to the same conclusion as the Seventh Circuit. Unless there is strong evidence that a legislative body intends to reenact a repealed statute or one that is substantially similar to it, repealing a statute will moot constitutional challenges to that statute. In the present case, Plaintiff has not alleged that the City Council plans to reenact the Public Speaking Ordinance or a similar law. Therefore, even if Plaintiff had standing to challenge the Public Speaking Ordinance before it was repealed, his challenge would now be moot.

In addition to arguing that repealing a statute is "voluntary cessation" of a challenged action and, therefore, does not render a case moot, Plaintiff argues that his constitutional challenge to the Public Speaking Ordinance is not moot because the challenged action is "capable of repetition yet evading review." Even when a plaintiff no longer has a concrete stake in the litigation, courts will continue to hear a case if "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975).

This doctrine, however, does not apply to the present case for several reasons. First, this case is no more "capable of repetition yet evading review" than any of the other cases discussed above where courts found that repealing a statute rendered a challenge to that statute moot. Secondly, Plaintiff has alleged nothing to support a contention that the City may reenact the Public Speaking Ordinance or

a similar statute. Therefore, there is no reasonable expectation that Plaintiff would be subjected to the same action again. Therefore, this case is not one that is "capable of repetition yet evading review."

Therefore, even if Plaintiff originally had standing to challenge the Public Speaking Ordinance, his challenges to the constitutionality and future existence of that ordinance would now be moot. Whether or not Plaintiff's claims for damages could survive as claims that seek "relief from alleged past rather than future unconstitutional action," *Clarkson v. Town of Florence,* 198 F.Supp.2d 997, 1004 (E.D.Wis. 2002), is not for the Court to decide today since Plaintiff lacks standing in the first place.

### 3. The Asheville Police Department

The Defendants ask the Court to dismiss the claims against the Asheville Police Department because, under North Carolina law, the Asheville Police Department is not a "person" and, therefore, lacks the capacity to be sued. The Defendants' position is clearly supported by legal precedent, and the Plaintiff makes no argument to the contrary. *Coleman v. Cooper,* 89 N.C.App. 188, 192, 366 S.E.2d 2, 5 (1988). Therefore, the Asheville Police Department will be dismissed from this action.

### 4. Defendant Westbrook

The Defendants ask the Court to strike or dismiss the claims against City Manager James Westbrook, Jr., in his official capacity, as redundant since the Plaintiff is maintaining an action against the City itself. In a similar scenario, the Fourth Circuit let stand a district court's decision to dismiss claims against government officials in their official capacities as redundant where the local governments were also defendants. *See, Brissett v. Paul,* 141 F.3d 1157 (table), 1998 WL 195945 (4th Cir.1998). The Court acknowledges Plaintiff's contention that this is not the proper motion in which the Defendants should argue that the claims are redundant; but whether or not Defendants have made the proper motion, the Court may strike redundant material from the pleadings. *See,* Fed.R.Civ.P. 12(f); *Coffman v. Wilson Police Dept.,* 739 F.Supp. 257, 262–63 (E.D.Pa.1990). Since there is no difference between suing Westbrook in his official capacity and suing the City itself, the Court orders the claims against Westbrook dismissed in the interest of judicial economy and efficiency. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

### B. Motions for preliminary injunctive relief and waiver of posting security to obtain preliminary injunctive relief.

Since all of Plaintiff's claims have been either dismissed or stayed, his motion for a preliminary injunction and his motion for waiver of posting security to obtain a preliminary injunction must be denied.

### IV. ORDER

IT IS, THEREFORE, ORDERED that the Defendants' motion to dismiss is hereby ALLOWED IN PART AND DENIED IN PART as reflected in the Court's Judgment filed herewith.

IT IS FURTHER ORDERED that Plaintiff's motions for preliminary injunction and waiver of posting security to obtain a preliminary injunction are hereby DENIED as moot.

### *JUDGMENT*

For the reasons set forth in the Memorandum of Opinion filed herewith,

IT IS, THEREFORE, ORDERED, AD-JUDGED, AND DECREED that the Defendants' motion to dismiss Plaintiff's complaint as to all claims involving the City of Asheville's Public Speaking and Picketing Ordinances is ALLOWED, and such claims are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED, AD-JUDGED, AND DECREED that the Defendants' motion to dismiss Plaintiff's complaint as to claims involving the City of Asheville's Noise Ordinances is DENIED, and such claims are hereby STAYED pending the outcome on state court proceedings.

IT IS FURTHER ORDERED, AD-JUDGED, AND DECREED that the Defendants' motion to dismiss Plaintiff's claims against Defendants Westbrook and the Asheville Police Department is ALLOWED, and the claims against these Defendants are hereby DISMISSED WITH PREJUDICE.

The Clerk is directed to remove this case from the Court's active docket and place same on the inactive docket until the conclusion of state proceedings. The parties are directed to notify the Court by the filing of an appropriate pleading when such proceedings are completed and the matter is appropriate for this Court's review.